**In re F.R.P. INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 86–00064.**

United States Bankruptcy Court, N.D. Florida, Gainesville Division.

March 24, 1987.

310

Robert Altman, Keystone Heights, Fla., for petitioning creditors.

Valerie J. Hall, Gainesville, Fla., for debtor.

## OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on to be heard upon the involuntary petition for relief under Chapter 11 of the Bankruptcy Code filed by Lester Walker, Clark Oil Company, and McEwen Lumber Company as petitioning creditors.

On May 2, 1986, Lester Walker and two trade creditors, Clark Oil Company, Inc. and McEwen Lumber Company filed the within involuntary Chapter 11 petition against F.R.P. Industries. The response filed herein on May 27, 1986, is a timely challenge by the alleged debtor (hereinafter, simply "debtor") to the involuntary petition in accordance with Section 303(h) of the Code, thus the court shall order relief against the debtor only if the debtor is generally not paying its debts as they become due, unless such debts are the subject of a bona fide dispute. (See § 303(h)(1)).

The alleged debtor had formerly been in the trucking business under the name F.R.P. Industries, but in 1979, the debtor's president, Felix Nall, decided to venture into the boat manufacture and sales business. Mr. Lester Walker, a friend of Nall's, provided the requisite financing and the boat business was begun and operated under the name of F.R.P. Industries (F.R.P.). Thereafter in late 1979, F.R.P. transferred all assets connected with the boat manufacturing business to a new entity, contemporaneously incorporated as Baha Cruisers, Inc., (Baha). F.R.P. remained solely in its former trucking business and the two corporations existed and operated side by side out of the same premises until 1982. At that time a fire destroyed the plant of Baha Cruisers, Inc. Thereafter Felix Nall, this time without aid from Lester Walker, rebuilt the boat plant and has been operating the business under the name of F.R.P. (rather than Baha) since 1982.

The three petitioning creditors allege in the involuntary petition certain sums of money due them from the debtor and assert that the debtor is not paying its debts as they become due. Walker contends that he and his wife are owed $100,112.50, represented by notes from F.R.P. to the Southeast Bank of Perry, N.A., dated 1979 and 1980, which were thereafter assigned to the Walkers when they, as guarantors, paid off these loans. Another $12,305.16 is claimed by the Walkers on a promissory note signed by F.R.P. The interest on the notes to the Southeast Bank and assigned to Walker is alleged by Walker to be due in the amount of $5,236.62. The Walkers further contend that they are due $149,096.02, representing loans to F.R.P. in the form of cash outlay and inventory purchases in 1980. The petitioning creditor Clark Oil claims $8,949.82 plus interest due on a judgment obtained against F.R.P. in 1983. Likewise, McEwen Lumber has a judgment obtained against F.R.P. in 1985, which with interest, totals $3,047.81.

The debtor contends that the debts to these three creditors are subject to bona fide dispute regarding either the amount, nature of the debt as capital contribution v. loan, identity of the debtor (as opposed to Baha) as obligor on the debt, or maturity of the debt. The debtor further contends that a substantial majority of its *undisputed* debts are being paid currently. It is the debtor's position that this involuntary petition is frivolous and was filed in bad faith by these creditors.

Much emphasis through argument and testimony in this case was put upon the issue of the identity of the obligor for the amounts asserted due. The petitioning creditors allege that the debtor F.R.P. and Baha Cruisers, Inc. were in reality one and the same entity. The petitioners thereby attempted to establish that whether in the name of Baha or F.R.P., the outstanding obligations were nonetheless those of the debtor. For reasons to be set forth herein, the Court need not resolve this issue.

 The Court does find that the $149,096.02, claimed by Walker is subject to a bona fide dispute. First, there is no written evidence of the claim in the form of a contract or note signed by the debtor. The funds were allegedly advanced in 1980,

thus any claim for that sum would appear to be barred by the four (4) year statute of limitations. (Florida Statutes § 95.11 (1982)).

Another $25,000 of the $100,112 appears to be based on a note signed by Walker for F.R.P. and for which Walker himself received the proceeds and applied them to a personal loan of his.

The record further establishes that between January 30, 1985, and April 15, 1986, the debtor paid Walker in excess of $32,000. The last payment on April 15, 1986, was in the amount of $5,000. There has been no accounting by Walker reflecting the application of these payments to his claim against F.R.P.

■ In reviewing Walker's claims against F.R.P., this Court concludes that a portion of the claim is subject to a bona fide dispute. The amount of the claim which is not subject to a good faith dispute as to liability is disputed in good faith. Nevertheless, the Court finds that Walker is qualified as a petitioning creditor. He does have a claim in excess of $5,000 which is not contingent as to liability nor is it subject to a bona fide dispute.

The claim of Clark Oil Company, Inc. originally listed as $8,949.82 has been partially satisfied, leaving an undisputed balance of $700.

■ The debtor disputes the claim of McEwen Lumber Company and asserts that it is a debt of Baha Cruisers rather than F.R.P. The testimony of Mr. Nall was that F.R.P. was unaware of the judgment obtained by McEwen Lumber Company until the instant petition was filed and that it had never been properly served with process in that action. However, the Final Judgment introduced by the petitioners reflects that F.R.P. appeared in that case through its counsel, thus, this Court is bound by the judgment in that case. Accordingly, the claim of McEwen Lumber Company is not subject to a bona fide dispute.

■ Having found that there are a sufficient number of petitioning creditors to file this involuntary petition for relief, the Court must now address the question of whether or not there has been a sufficient showing that the debtor is not generally paying its debts as they become due. Also, the Court should consider whether or not the petition was filed in good faith. Based on the evidence presented at trial, this Court finds that the petitioners have failed to prove that F.R.P. was not generally paying its debts as they became due. The Court also finds, as to petitioner Walker, that the petition was not filed in good faith.

On the first question, the financial records of F.R.P. reflect a business which, as of June 30, 1986, was averaging over $250,000 per month in gross sales in the first eight months of its fiscal year. Its fiscal year-to-date net income was in excess of $120,000. The debtor was dealing with over one hundred (100) suppliers, paying many on a C.O.D. basis and paying the majority of those remaining within thirty (30) to sixty (60) days.

■ In addition to the claims of the three petitioning creditors, the creditors called four other witnesses who testified that F.R.P. had owed them money and that they had trouble collecting it. Two of the witnesses had been owed less than $500 each and had been paid by F.R.P. post-petition. Two others had claims which pre-dated the 1982 fire and one witness testified that he had charged off the debt in 1980. These two claims would appear to be barred by the statute of limitations and should not be considered.

Even with respect to the claims of Mr. Walker, the evidence shows that payments were being made. It is noteworthy that one of the notes giving rise to Mr. Walker's claims is by its terms, a demand note, but Mr. Walker admitted that he had never demanded payment of the note.

There is no exact formula for determining whether a debtor is "generally not paying its debts". Flexibility and judicial discretion are meant to be preserved under this test. 2 *Collier on Bankruptcy*, 15th Ed. ¶ 303.12, pp. 303–353; *In re B.D. International Discount Corp.*, 701 F.2d 1071, 1075 (2nd Cir.1983). Here, the debtor's

current operations appear to be profitable. Its financial affairs are generally being handled in a responsible manner. Except for some periods of slow payments due to the seasonal nature of its business, it is meeting virtually all of its current obligations in a timely fashion.

The petitioning creditors and witnesses called in support of the petition represent debts incurred as long as seven years before the petition was filed and during times of economic hardship for the debtor. Several of the older debts have been paid prior to or after the involuntary petition was filed. It appears that the debtor is making a good-faith effort to take care of these older obligations. Given the totality of the circumstances, this Court cannot find that F.R.P. is generally not paying its debts as they become due pursuant to 11 U.S.C. § 303(h)(1).

In reaching the foregoing conclusion, the Court also considered the good faith of Mr. Walker in seeking to file the petition. The evidence is clear that he was the driving force behind the petition and it was he who sought out the other two petitioners. Prior to initiating this proceeding, Mr. Walker made no effort at all to avail himself of the collection remedies provided under state law. His assertion that he didn't think that it would do any good is unconvincing. The June 30, 1986, balance sheet of F.R.P. shows $645,458 in total assets with $352,870 in current assets. The total liabilities shown were $370,318, giving total owner's equity of $275,140. Thus, the company could hardly be said to be "judgment proof".

It appears that Mr. Walker's true motive was to use the Bankruptcy Code as a means of effectuating a takeover of F.R.P., now that it has become a profitable business. This conclusion is supported by Mr. Walker's own testimony that he wanted to take over the company and run it to get his money; testimony supported by that of Mr. Wayne Jones. Mr. Jones testified that he had explained to Mr. Walker how a competing plan could be filed in a Chapter 11 under which the debtor corporation could be taken over. Thus, it appears that this involuntary petition is, in effect, an attempt at a hostile takeover. This type of activity is clearly not within the legislative intent of the Bankruptcy Code and constitutes an abuse of the bankruptcy court's jurisdiction. See, *U.S. Fidelity & Guaranty Co. v. D.J.F. Realty & Suppliers,* 58 B.R. 1008 (N.D.N.Y.1986).

Based on the foregoing, the involuntary petition filed against F.R.P. Industries, Inc. should be dismissed.

An order shall issue in accordance herewith.