**In re COMPUHOUSE SYSTEMS, INC., Alleged Debtor.**

**Bankruptcy No. 94–21030–BM.**
**Motion No. 94–590M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 20, 1994.

Paul R. Yagelski, Pittsburgh, PA, for Compuhouse Systems, Inc.

Shiela Smith DiNardo, Katarincic & Salmon, Pittsburgh, PA, for petitioning creditors.

Deborah C. Phillips, Com. of Pennsylvania Dept. of Labor & Industry, Office of Employment Security, Pittsburgh, PA, for Com. of Pa., etc.

Carl P. Izzo, Jr., Trustee, Greensburg, PA.

Kathleen Robb–Singer, Office of United States Trustee, Pittsburgh, PA.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor seeks (at Motion No. 94–590M) to have the involuntary chapter 7 petition brought against it dismissed. It also seeks pursuant to 11 U.S.C. § 303(i)(1) to recover attorney's fees and costs incurred in resisting the involuntary petition and requests pursuant to 11 U.S.C. § 303(i)(2)(B) an award of punitive damages.

According to debtor, the petition must be dismissed because it has not been brought by at least three petitioning creditors whose debts are not subject to *bona fide* dispute. Also, debtor asserts that the involuntary petition was brought in bad faith and that an award of punitive damages therefore is appropriate.

Petitioning creditors deny that the debts owed to them by debtor are subject to *bona fide* dispute and insist that an award of attorney's fees, costs, and punitive damages is inappropriate.

An evidentiary hearing was scheduled for and occurred on June 1, 1994, wherein the petitioning creditors were required to prove each and every element necessary to an involuntary bankruptcy proceeding. As they have failed to meet their burden of proof, the involuntary petition will be dismissed. However, debtor's request for attorney's fees, costs, and punitive damages will be denied.

–I–

## FACTS

Debtor avers it became a "business partner" of IBM Corporation ("IBM") in September of 1991 for the purpose of selling IBM computers and related software to third parties in a specified geographical area. In order to become IBM's "business partner", debtor was required to lease an IBM AS400 computer and related software from IBM Credit Corporation ("ICC").

On October 1, 1991, debtor executed a lease agreement with ICC, a wholly-owned subsidiary of IBM, wherein debtor agreed to lease the above computer and software from ICC for a fixed term. Several supplements to the lease subsequently were executed.

On March 13, 1993, IBM sent a letter to debtor informing debtor that its account with ICC was delinquent.

Debtor's president sent a letter to IBM on April 5, 1993 complaining about two software systems debtor had been required to purchase from ICC and protesting that IBM was competing with debtor for its accounts. The IBM employee to whom the letter was addressed responded by letter on April 15, 1993. The letter stated that "IBM will rescind the ICC lease [on the two software systems] and credit your account for the amount you have paid to date on these products". IBM issued a credit invoice in the amount of $5,850.00 to debtor on June 1, 1993. The heading at the top of the invoice read as follows: "Invoice For IBM Credit Corporation".

IBM's legal counsel sent a letter to debtor on October 5, 1993 notifying debtor that it was in default of the lease agreement with ICC. Debtor was informed that all IBM equipment in its possession would be repossessed unless ICC received payment in a specified amount by a certain date. When debtor failed to cure the default, ICC repossessed the equipment on October 18, 1993. Some of the equipment that ICC had leased to debtor was missing when ICC repossessed.

ICC brought a civil action early in 1994 in state court against debtor and its principals.

**308**

The complaint consisted of separate counts for breach of contract, replevin, and conversion, respectively. Debtor and its principals responded with a counterclaim against ICC for breach of contract.

Shortly after commencing the action in state court, ICC sought to compel defendants to testify as to the whereabouts of the missing equipment and sought a writ of seizure. Debtor's principal stated under oath at the hearing on ICC's motion that debtor had sold the missing equipment to a third party and no longer had the proceeds realized from the sale. He also testified that debtor still had some software belonging to ICC which debtor was willing to return to ICC. A writ of seizure subsequently was issued pursuant to a court order.

On March 31, 1994, before further action could be taken in the above state court proceeding, an involuntary chapter 7 proceeding was brought against debtor pursuant to 11 U.S.C. § 303(b)(1) by three petitioning creditors. ICC claimed that a debt in the amount of $153,980.35 arising out of the above lease was owed to it. Ad–Star, Inc. claimed that a trade debt in the amount of $18,000.00 was owed to it. Shavel Photography claimed that a consumer debt in the amount of $1,000.00 was owed to it. The driving force behind the involuntary petition was IBM.

Debtor responded to the involuntary petition by bringing a motion to dismiss the involuntary petition. According to debtor, the debt allegedly owed to each of the petitioning creditors was subject to *bona fide* dispute. Also, debtor alleged that the petition had been brought in bad faith and sought attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) and unspecified punitive damages pursuant to 11 U.S.C. § 303(i)(2)(B).

Several other petitioning creditors sought to join in the involuntary petition pursuant to 11 U.S.C. § 303(c) before any action could be taken on debtor's motion to dismiss. D & H Co., Inc. claimed it was owed the sum of $9,881.68 for goods delivered. Fayette Broadcasting claimed that it was owed the sum of $831.81 for advertising. Tracy's Trusty Hardware Store claimed that it was owed the sum of $16,690.32 as debtor's land-lord. Patti Hensel, an employee of debtor, claimed that she was owed the sum of $196.00 for unpaid wages. WCVI/WPQR Radio claimed that it was owed the sum of $3,098.99 for advertising.

A hearing on debtor's motion was held on June 1, 1994. Debtor objected at the hearing to the joinder of the additional petitioning creditors. The only original petitioning creditor to appear at the hearing was ICC. The only additional petitioning creditors to appear were Patti Hensel and WCVI/WPQR Radio. None of the other petitioning creditors saw fit to appear at the hearing.

–II–

**ANALYSIS**

The involuntary petition against debtor was brought pursuant to 11 U.S.C. § 303(b)(1), which provides as follows:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

A contested involuntary petition must be closely scrutinized because involuntary bankruptcy is a severe measure that frequently carries serious consequences for the involuntary debtor, such as loss of credit standing, interruption of business affairs, and even public embarrassment. *See In re McDonald Trucking Co., Inc.,* 76 B.R. 513, 516 (Bankr.W.D.Pa.1987).

The test for determining whether a debt is subject to *bona fide* dispute for purposes of § 303(b)(1) is reminiscent of the standard for summary judgment: if there is a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts, there is a *bona fide* dispute. *See BDW Associates, Inc. v. Busy*

*Beaver Bldg. Center, Inc.,* 865 F.2d 65, 66–67 (3d Cir.1989).

■ When it is applying this standard, the court must determine whether there is an objective basis for a legal or a factual dispute concerning the validity of the debt. *See Matter of Busick,* 831 F.2d 745, 749 (7th Cir.1987). The court need only determine whether the dispute is *bona fide,* not resolve it. *See In re Ramm Industries,* 83 B.R. 815, 822 (Bankr.M.D.Fla.1988). A determination that a dispute is *bona fide* should not be construed as indicating how the court would resolve the merits of the dispute. *See In re Lough,* 57 B.R. 993, 997 (Bankr.E.D.Mich. 1986).

■ The burden of proving that the statutory requirements of § 303(b) have been met is on the petitioning creditors. *See Atlas Machine & Iron Works v. Bethlehem Steel,* 986 F.2d 709, 716 (4th Cir.1993).

The involuntary petition will be dismissed because it does not comply with the requirements of § 303(b)(1). It has not been brought by at least three petitioning creditors to whom debts not subject to *bona fide* dispute are owed.

■ The debt allegedly owed to ICC by debtor is subject to *bona fide* dispute. There is an objective basis for disputing the validity of the debt allegedly owed to ICC by debtor. Were debtor to prevail on its counterclaim against ICC, the amount of debtor's recovery conceivably could exceed the amount debtor owes to ICC pursuant to the lease agreement, in which case the debt owed to ICC by debtor effectively would be extinguished.

Debtor asserts that in reality it was dealing with IBM at all relevant times and claims that IBM and ICC should be regarded in this instance as the same legal entity. As has been indicated, IBM, not ICC, dealt directly with debtor on several occasions concerning debtor's lease with ICC. On March 13, 1993, IBM sent a letter to debtor informing debtor that its account with ICC was delinquent. On April 15, 1993, IBM sent a letter to debtor stating that IBM would rescind the ICC lease for certain software and would credit debtor's account with ICC for amounts paid by debtor for certain software. On June 1, 1993, IBM issued an invoice crediting debtor's account with ICC.

At the hearing on debtor's motion to dismiss the involuntary petition, debtor's principal stated that the counterclaim for breach of contract was based in part upon an oral agreement with IBM/ICC that debtor was to be IBM's exclusive agent in Fayette County, Pennsylvania. According to debtor, IBM/ICC breached the oral agreement when it subsequently began selling products directly to customers in Fayette County.

At the very least, a genuine issue bearing upon debtor's liability to ICC remains to be resolved. If, as debtor contends, such an oral agreement was reached and IBM and ICC should be regarded as one and the same entity, debtor may not owe any debt to ICC. To the contrary, ICC may owe a debt to debtor.

It cannot be concluded at this time that debtor's counterclaim against ICC is wholly lacking in merit and that debtor cannot possibly prevail. Accordingly, it must be concluded that the debt owed to ICC by debtor is subject to *bona fide* dispute.

■ The involuntary petition against debtor was **not** brought by at least three petitioning creditors to whom debtor owes debts that are not subject to *bona fide* dispute. At most, only two of the debts owed to petitioning creditors so qualify. Aside from Patti Hensel and WCVI/WPQR Radio, whose debts do not amount to the minimum $5,000.00, no other petitioning creditor saw fit to appear at the hearing to establish the *bona fides* of the debt owed to it by debtor.

In summary, it is clear to the court that this matter directly emanates from the relationship between IBM/ICC and debtor. The lawsuit is presently in the state system and is ripe for determination. In order to obtain a tactical advantage by moving from the state forum to federal bankruptcy court, IBM/ICC sought out and presented two (2) creditors whose debts did not meet the statutory requirement. No real proof was offered indicating debtor was not generally paying its *bona fide,* undisputed debts as they came

due. Accordingly, the involuntary petition must be dismissed.

The determination that the involuntary petition must be dismissed is not the end of the matter. As has been indicated, debtor also seeks an award of attorney's fees and costs and punitive damages pursuant to 11 U.S.C. § 303(i), which provides as follows:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

■ Dismissal of an involuntary petition does not mean that attorney's fees and costs therefore must be awarded to the prevailing debtor pursuant to § 303(i)(1). *See In re Nordbrock*, 772 F.2d 397, 400 (8th Cir.1985). Such an award rests in the sound discretion of the trial court. *See In re Reid*, 854 F.2d 156, 159 (7th Cir.1988).

■ Although bad faith is not a prerequisite to an award of attorney's fees and costs pursuant to § 303(i)(1), such fees and costs are "routinely" awarded when the petition was brought in bad faith or when dismissal follows seizure of debtor's property prior to entry of an order for relief. In virtually all other instances, the court must look at the totality of the circumstances. *See In re Ross*, 135 B.R. 230, 237 (Bankr.E.D.Pa. 1991). The merits of the involuntary petition may be highly relevant in this regard. The closer the question of dismissal, the less appropriate it may be to award attorney's fees and costs. *See In re Reid*, 854 F.2d at 160.

■ Awarding debtor the attorney's fees and costs it allegedly incurred in successfully resisting the involuntary petition brought against it would not be appropriate in this instance. The contention of petitioning creditors that the debt owed to ICC was not subject to *bona fide* dispute, although erroneous, was not manifestly implausible.

When viewed in isolation, it might appear that the debt owed to ICC was not subject to *bona fide* dispute. Debtor conceded that it had ceased making payments to ICC, as required by the lease agreement, and that it had sold some of the leased equipment to a third party without ICC's permission and without remitting the proceeds to ICC. As has been shown, it becomes clear that the debt in question indeed is subject to *bona fide* dispute only when debtor's unresolved counterclaim against ICC is taken into account.

Petitioning creditors erred in failing to take debtor's counterclaim against ICC into account and in failing to appreciate the potential effect it had on the *bona fides* of the debt owed to ICC by debtor. This oversight, although fatal to the involuntary petition, is not sufficiently egregious to warrant awarding .debtor the attorney's fees and costs it allegedly incurred in successfully resisting the involuntary petition.

■ As has been indicated, debtor alleges that the involuntary petition was brought in bad faith and requests an award of punitive damages in an unspecified amount pursuant to 11 U.S.C. § 303(i)(2)(B).

■ The test for determining whether an involuntary petition was brought in bad faith consists of an objective component and a subjective component. A court must, when determining whether an involuntary petition has been brought in bad faith, determine whether a reasonable person would have brought the petition (objective component) as well as examine the motivations of the petitioning creditors (subjective component). *See Atlas Machine & Iron Works*, 986 F.2d at 716. In particular, the court must look to the level of pre-filing inquiry conducted by the petitioning creditor and to the purpose of the filing. *See In re McDonald Trucking*, 76 B.R. at 516.

■ The burden of proving that an involuntary petition was brought in bad faith is

upon debtor. *See Atlas Machine & Iron Works,* 986 F.2d at 716 n. 9. Debtor has failed to establish that the involuntary petition was brought in bad faith.

To begin with, it cannot be said that a reasonable person in the shoes of petitioning creditors in this case would not have brought the involuntary petition. It was not entirely unreasonable of petitioning creditors to fail to appreciate the legal significance of the unresolved counterclaim and its resulting effect upon the status of the debt allegedly owed to ICC by debtor. It is likely that many petitioning creditors would have failed, albeit erroneously, to accord proper significance to the unresolved counterclaim.

Also, debtor has failed to establish that the motivation of petitioning creditors in bringing the involuntary was improper in any way.