**IBM CREDIT CORPORATION,**
Appellant,

v.

**COMPUHOUSE SYSTEMS, INC., D & H Company, Inc., Tracy's Trustworthy Hardware, Fayette Broadcasting Corp., WCVI/WPAR Radio, Patti Hensel, Patricia C. Shavel, Manager/Proprietor Shavel Photography, and Jeffrey K. Rasco, President Ad–Star, Inc., Defendants.**

Civ. A. No. 94–1323.

United States District Court,
W.D. Pennsylvania.

March 28, 1995.

the parties. For the reasons set forth below, the order of the Bankruptcy Court will be reversed, and the case remanded.

IBM Credit Corporation [hereinafter ICC]; Ad–Star, Inc. [hereinafter Ad–Star]; and Shavel Photography initiated the involuntary bankruptcy proceedings against Appellee Compuhouse Systems, Inc. [hereinafter Compuhouse] by filing an Involuntary Petition under Chapter 7 of the Bankruptcy Code on March 31, 1994. ICC thereafter filed a Motion for Appointment of an Interim Trustee and a Motion for Expedited Hearing. An emergency hearing was held by the Bankruptcy Court on April 7, 1994. The Bankruptcy Court granted ICC's Motion for Appointment of an Interim Trustee. Compuhouse did not file an Answer to the Involuntary Petition filed by ICC, Ad–Star, and Shavel Photography; rather, Compuhouse filed a "Motion to Dismiss ... and for Costs, Attorney's Fees, Damages and Punitive Damages and to Prohibit Addition of Additional Creditors."

Several "Notices of Joinder to Involuntary Petition" were then filed by additional creditors pursuant to 11 U.S.C. § 303(c). Specifically, Fayette Broadcasting Corp. filed a claim for $831.81 (Volume II of Appellant's Appendix, Exhibit 26); Tracy's Trustworthy Hardware filed a claim for $16,690.32 (Exhibit 27); Patti Hensel filed a claim for $196.00 (Exhibit 29); WCVI/WPAR Radio filed a claim for $3,098.99 (Exhibit 30); and, D & H Company, Inc. filed a claim for $9,881.68 (Exhibit 31).

In its Motion to Dismiss, Compuhouse alleged that the Involuntary Petition should be dismissed on a number of grounds. Compuhouse argued that ICC lacked standing to file the petition because there was a bona fide dispute as to the ICC claim. The alleged bona fide dispute involved a civil action filed by ICC in the Court of Common Pleas of Fayette County, Pennsylvania. Compuhouse alleged that ICC was seeking, through its involuntary bankruptcy proceedings, to recoup monies owed for a claim which was in dispute in the Court of Common Pleas of Fayette County. Compuhouse concluded that because it had disputed the claim in Fayette County and had also filed a counter-

Katarincic & Salmon, Robert J. Ridge, Pittsburgh, PA, for appellant.

Rothman Gordon and Paul R. Yagelski, Pittsburgh, PA, for appellees.

### MEMORANDUM OPINION AND ORDER OF COURT

AMBROSE, District Judge.

Pending before the Court is the Appeal of IBM Credit Corporation from a final Order of the United States Bankruptcy Court for the Western District of Pennsylvania which granted the Motion of Appellee, Compuhouse Systems, Inc., to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and Bankruptcy Rule 1011(b). Jurisdiction is based on 28 U.S.C. § 158(a). The issues on appeal have been fully briefed by

claim in that action, that the claim of ICC was subject to a bona fide dispute.

Compuhouse also argued in its Motion to Dismiss that Ad–Star and Shavel Photography lacked standing to file the petition because there was a bona fide dispute as to their claims. With respect to the Ad–Star claim, Compuhouse specifically argued that "Ad–Star had an agreement with Compuhouse by which it would trade off various services and/or equipment with Compuhouse and has received either the amount of its claim or in excess of its claim in trade, equipment and/or services." (Volume I of Appellant's Appendix, Exhibit 23, PP 00237, ¶ (b)) Compuhouse did not make any specific allegations as to why the Shavel Photography claim was subject to a bona fide dispute. The petition, according to Compuhouse, should therefore have been dismissed for failure to satisfy the jurisdictional requirements of 11 U.S.C. § 303(b)(1).

Additionally, Compuhouse argued that the petitioning creditors filed the involuntary bankruptcy petition in bad faith because they knew, or should have known, that their respective claims were legitimately disputed. Compuhouse asked the Bankruptcy Court not to consider the claims of the joining petitioners due to the bad faith filing of the original petition. The Bankruptcy Court scheduled a hearing on the Motion to Dismiss for June 1, 1994. The Order issued by the Bankruptcy Court stated that "all parties and their counsel shall appear for the hearing. All parties are directed to bring witnesses and/or documents that are needed to prove their case." (Volume I of Appellant's Appendix, Exhibit 24, PP 00287) At the June 1, 1994, hearing, counsel for Compuhouse and counsel for ICC appeared. The witnesses that appeared on behalf of the petitioning creditors were Russell J. Wargin, an employee of IBM Corporation; Patti Denise Hensel, a creditor who filed a joinder to the involuntary petition; and Richard J. Loading, an employee of Kelly Associates who performed bookkeeping and accounting services for two radio stations WCVI/WPQR Radio, a creditor who filed a joinder to the involuntary petition. Allan Bruce Arm-strong, the executive vice president of Compuhouse, testified on behalf of Compuhouse.

At the June 1, 1994, hearing, counsel for ICC attempted to introduce the affidavit of Mr. Carr, the owner of joining petitioner Fayette Broadcasting Corp.; an affidavit from Patricia Shavel of Shavel Photography; and deposition testimony of Mr. Rasco of Ad–Star, but the Bankruptcy Court rejected all of these submissions. The Bankruptcy Court stated, "We scheduled this for a substantial time period so as to take testimony. I don't expect that affidavits are going to carry the day. This is a contested matter. You're going to need real live bodies who will testify and offer—offer evidence that we deem credible." (Volume I of Appellant's Appendix, Exhibit 3, PP 00063)

In a Memorandum Opinion and Order dated June 20, 1994, 168 B.R. 305, the Bankruptcy Court granted Compuhouse's Motion to Dismiss, holding that there was a bona fide dispute as to the ICC debt, and that the involuntary petition was not brought by at least three petitioning creditors as required by 11 U.S.C. § 303(b)(1). In reaching this conclusion, the Bankruptcy Court found that only two of the debts owed to petitioning creditors qualified under Section 303(b)(1) and these debts did not amount to the minimum $5,000. The Bankruptcy Court refused to consider the other petitioning creditors because "no other petitioning creditor saw fit to appear at the hearing to establish the bona fides of the debt owed to it by debtor." (Volume I of Appellant's Appendix, Exhibit 1, Bank.Ct.Mem.Op. and Order, p. 9–10 [168 B.R. at 309]) The Bankruptcy Court further held that the involuntary petition was not filed in bad faith.

In reviewing an order of a bankruptcy court, a district court must apply a clearly erroneous standard to the court's findings of fact. Fed.R.Bank.P. 8013, *In re Gillingham*, 150 B.R. 907 (W.D.Pa.1993). A bankruptcy court's conclusions of law, however, are subject to plenary review. *Landon v. Hunt*, 977 F.2d 829, 830 (3d Cir.1992).

ICC argues that the Bankruptcy Court's Order should be reversed because at the time of the June 1, 1994, hearing, there were five petitioning creditors (Hensel, WCVI, Shavel's, Tracy's Hardware and D & H)

whose verified claims satisfied the jurisdictional requirements of 11 U.S.C. § 303(b)(1). ICC contends that the Bankruptcy Court erred in failing to consider these verified claims based on the failure of these creditors to appear as "live witnesses" at the hearing on the motion to dismiss set by the Bankruptcy Court. ICC also argues that the Bankruptcy Court erred in concluding that ICC's $153,000 claim that was part of the Involuntary Petition could not be considered under 11 U.S.C. § 303(b)(1) because the claim was the subject of a bona fide dispute.

Compuhouse argues that ICC has not demonstrated that Compuhouse was not paying its debts as they came due. Compuhouse also argues that the Bankruptcy Court did not abuse its discretion in requiring ICC to demonstrate jurisdiction through live witnesses rather than affidavits or verified petitions. Finally, Compuhouse argues that ICC's claim was subject to a bona fide dispute and that there is sufficient evidence of record to demonstrate this.

The Involuntary Petition was filed pursuant to 11 U.S.C. § 303(b)(1). This section provides:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

11 U.S.C.A. § 303(b)(1) (1993).[1]

■ We first address whether the Bankruptcy Court erred in failing to consider the claims of the petitioners who filed joining petitions. The joining petitioners filed their petitions pursuant to 11 U.S.C. § 303(c) which provides:

> (c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

11 U.S.C.A. § 303(c) (1993).

ICC argues that absent a finding of bad faith, the Bankruptcy Court cannot bar additional creditors from joining the petition under Section 303(c). Specifically, ICC states that "[i]n the absence of a bad faith finding, the Court's failure to consider the claims of the joining petitioners runs afoul of the mandatory language of Section 303(c)." (ICC's Brief, p. 14) We agree.

The Bankruptcy Court recognized in its Opinion and Order that there were "[s]everal other petitioning creditors [who] sought to join in the involuntary petition pursuant to 11 U.S.C. § 303(c) before any action could be taken on debtor's motion to dismiss." (Volume I of Appellant's Appendix, Exhibit 1, Bank.Ct.Mem.Op. and Order, p. 5 [168 B.R. at 308]) The Bankruptcy Court did not, however, address why these petitions were not considered in determining whether the three-petitioner requirement of 11 U.S.C. § 303(b)(1) had been met. "Joinder is a matter of right ... The straightforward language of the statute permits any number of qualifying creditors to sign onto the petition and be treated as if they had signed the petition before it was filed." *In re Kelly G. Kidwell*, 158 B.R. 203, 210 (Bankr.E.D.Cal. 1993). The only argument concerning the petitioning creditors that was advanced by Compuhouse was that the joinder should not be allowed because the original petition was filed in bad faith. The Bankruptcy Court concluded that no bad faith existed, and that finding is not challenged on appeal. Compuhouse did not argue that the joining creditors had presented claims that did not satisfy the requirements of 11 U.S.C. § 303(b)(1).

1. On October 22, 1994, this section was amended to increase the aggregate claim amount to $10,-000. This amendment does not apply to cases commenced under Title 11 before October 22, 1994. *See* 11 U.S.C.A. § 303(b)(1) (West Supp. 1995).

■ The Bankruptcy Court apparently concluded that because the joining creditors did not appear at the hearing set for the Motion to Dismiss filed by Compuhouse, their claims should not be considered. We find this decision to be in error. There was no challenge made by Compuhouse with regard to whether the joining petitions satisfied Section 303(b)(1). Even assuming, *arguendo*, that such a challenge had been made, we have found no authority which supports the proposition advanced by Compuhouse (and employed by the Bankruptcy Court) that the phrase "the issue of jurisdiction is left to the discretion of the Trial Court and *may be made* upon affidavits or other documentary evidence *or upon oral testimony* " means that the bankruptcy court can choose what kind of testimony it wishes to hear on a motion to dismiss. (Brief of Compuhouse, p. 15, emphasis in original)

Compuhouse cites *Mortensen v. First Fed. Sav. and Loan Ass'n.,* 549 F.2d 884 (3d Cir.1977), in support of its assertion that a court can, in its discretion, choose to allow either affidavits, documents or oral testimony to resolve a jurisdictional issue. We do not find *Mortensen* to support such a result. In fact, the court in *Mortensen* stated:

> [W]hile the trial court does have significant latitude in determining matters of its own jurisdiction, we have never departed from the rule that even on such an issue the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention.

*Mortensen,* 549 F.2d at 893.

The record indicates that there were at least three petitioning creditors whose claims aggregate $5,000 and were not subject to a bona fide dispute. The Bankruptcy Court's decision must therefore be reversed.

We next address whether ICC's debt was subject to a bona fide dispute. The Bankruptcy Court determined that there was an objective basis for disputing the validity of the ICC debt and that if Compuhouse would prevail in its counterclaim in the Fayette County action, that Compuhouse's "recovery conceivably could exceed the amount [Compuhouse] owes to ICC pursuant to the lease agreement, in which case the debt owed to ICC by [Compuhouse] effectively would be extinguished." (Volume I of Appellant's Appendix, Exhibit 1, Bank.Ct.Mem.Op. and Order, p. 8 [168 B.R. at 309] ) The Bankruptcy Court reasoned that Compuhouse's counterclaim in the Fayette County action for breach of contract was "based in part upon an oral agreement with IBM/ICC that debtor was to be IBM's exclusive agent in Fayette County, Pennsylvania ... If, as [Compuhouse] contends, such an oral agreement was reached and IBM and ICC should be regarded as one and the same entity, [Compuhouse] may not owe any debt to ICC." (Volume I of Appellant's Appendix, Exhibit 1, Bank.Ct. Mem.Op. and Order, p. 9 [168 B.R. at 309] )

A bona fide legal dispute has been defined by the Third Circuit as:

> If there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed ... [S]ubstantial factual and legal questions raised by debtor preclude finding of involuntary bankruptcy.

*B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.,* 865 F.2d 65, 66–67 (3d Cir.1989), citing *In re Lough,* 57 B.R. 993 (Bankr.E.D.Mich.1986), and *In re Busick,* 831 F.2d 745 (7th Cir. 1987).

The Fifth Circuit, after adopting the standard set forth by the Third Circuit, further stated with respect to burdens of proof:

> The petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute.

*Matter of Sims,* 994 F.2d 210, 221 (5th Cir. 1993), citing *In re Rimell,* 946 F.2d 1363, 1365 (8th Cir.1991). *Accord, John Maroon*

*Produce v. First E. Bank,* 150 B.R. 350, 351 (Bankr.M.D.Pa.1992) (concluding that the burden of coming forward with evidence of a bona fide dispute is on the debtor).

ICC argues that the existence of a counterclaim is insufficient to create a bona fide dispute. Moreover, ICC argues, Compuhouse presented no evidence with respect to the value of the alleged counterclaim. Compuhouse contends that "there is more than ample factual basis for the Court's finding. It is not clearly erroneous ... [because the Bankruptcy Court] had a distinct factual basis to premise its decision on." (Compuhouse's Brief, p. 18) Compuhouse further argues that "the Bankruptcy Court found that the Debtor asserted that in reality it was dealing with IBM at all relevant times and claims that IBM and ICC should be regarded in fact as the same legal entity. In fact, IBM, not ICC, dealt directly with the Debtor on several occasions concerning the Debtor's lease with ICC." (Compuhouse Brief, p. 18)

▮ Initially, we would note that ICC is correct in stating that many bankruptcy courts have held that the mere existence of a counterclaim is insufficient to create a bona fide dispute. *See e.g. In re Data Synco, Inc.,* 142 B.R. 181 (Bankr.N.D.Ohio 1992), *In re Onyx Telecommunications, Ltd.,* 60 B.R. 492, 498 (Bankr.S.D.N.Y.1985). Moreover, it is clear that if at least a portion of the debt that is the subject of the petition is undisputed, the undisputed portion is sufficient to create a debt under Section 303(b)(1) not subject to a bona fide dispute. *See In re Willow Lake Partners II, L.P.,* 156 B.R. 638, 643 (Bankr.W.D.Mo.1993), *In re F.R.P. Indus., Inc.,* 73 B.R. 309, 312 (Bankr.N.D.Fla. 1987), *In re Onyx,* 60 B.R. at 497. Since at least $22,000 of the ICC debt is undisputed,[2] the Bankruptcy Court could have concluded, on that basis alone, that ICC satisfied the requirements of Section 303(b)(1).

▮ However, based on the record before us, we find that the Bankruptcy Court erred in finding that any portion of ICC's claim was subject to a bona fide dispute. In *Matter of Sims,* 994 F.2d 210 (5th Cir.1993), the

Fifth Circuit addressed whether a bona fide dispute existed with respect to debts owed to three petitioning creditors for defaults on subleases and equipment) leases entered into by the debtors with each of the petitioning creditors (Subway Equipment Leasing Corp., Subway Restaurants, Inc., and Subway Sandwich Shops, Inc.). The debtors argued that they were unable to make the payments under the leases because the corporate franchisor (DAI) with whom the creditors were affiliated withheld money owed on a "development agent" contract entered into between the debtors and DAI. The Fifth Circuit found that this did not create a bona fide dispute as to the three creditors' claims because the debtor's dispute with DAI:

> has nothing to do with the debtors' obligations under the equipment leases and subleases, and did not relieve them of their liability for unpaid rent. The debtors' contention that they were unable to make their payments on the subleases and equipment leases because DAI withheld money owed Earl Sims as a development agent amounts to nothing more than an attempt to explain why they failed to pay—it does not call into question the validity of their debts for unpaid rent to SEL, SRI, and SSS.

*Matter of Sims,* 994 F.2d at 221.
We find this reasoning persuasive.

Moreover, it is clear that even assuming all of the Bankruptcy Court's findings of fact are correct, nothing more than Compuhouse's subjective belief concerning the validity of the counterclaim was presented. In its counterclaim, Compuhouse states:

> 38. Commencing after the execution of the Leases attached to Plaintiff's Complaint, the Plaintiff [ICC] breached said Lease Agreements by failing to provide the Defendant, Compuhouse, with appropriate support systems and other aid required by said Leases.
>
> 39. Subsequent to the execution of the Leases aforesaid, Plaintiff, its agents, servants, and employees attempted to force the Defendants to charge more for goods and/or services such as would have worked

**2.** See Volume I of Appellant's Appendix, Exhibit 3, PP 00031; Exhibit 40 PP 00388).

a fraud upon the customers of Defendant, Compuhouse.

(Volume I of Appellant's Appendix, Exhibit 23, PP 00280–00281) Like the allegations in *Matter of Sims,* Compuhouse alleges that *IBM Corporation's* breach of the exclusive agent agreement and the business partner agreement caused the breach of the ICC/Compuhouse lease agreement at issue. ("IBM/ICC breached the agreement with Compuhouse by taking the foregoing arrangements away. The $2,000 payment was removed. Compuhouse did not receive an exclusive territory." Compuhouse's Brief, p. 20) While this may explain why Compuhouse failed to pay, it does not call into question the validity of the debt for unpaid lease payments. *Matter of Sims,* 994 F.2d at 221.

To the extent that Compuhouse attempts to rely upon the assertion that "IBM and ICC should be regarded in fact as the same legal entity," (Compuhouse's Brief, p. 18), we find that no evidence in support of an "alter ego" theory was argued or adduced by Compuhouse. *See e.g. B.D.W. Assoc.,* 865 F.2d at 68.

With respect to Compuhouse's argument that ICC failed to demonstrate, pursuant to 11 U.S.C. § 303(h) that Compuhouse was not paying its debts as they became due, we find this argument to be without merit. The issue before the Bankruptcy Court was whether the requirements of Section 303(b)(1) were satisfied, not whether relief would be granted. *See* 11 U.S.C. § 303(h). The decision of the Bankruptcy Court will be reversed and the case remanded for proceedings consistent with this Opinion and Order.

### ORDER OF COURT

**AND NOW,** this 28th day of March, 1995, after careful consideration and for the reasons set forth in the Opinion accompanying this Order, it is hereby **ORDERED** that the Appeal of IBM Credit Corporation from the Order of the U.S. Bankruptcy Court for the Western District of Pennsylvania is **GRANTED.**

It is further **ORDERED** that the decision of the Bankruptcy Court is **REVERSED** and the case **REMANDED** *forthwith* for pro-

ceedings consistent with this Opinion and Order.