In re BAKER & DRAKE, INC., dba "Yellow Cab", et al., Debtor.

BAKER & DRAKE, INC., Appellant,

v.

PUBLIC SERVICE COMMISSION OF NEVADA, Appellee.

No. 92–16983.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1994.

Decided Sept. 7, 1994.

---

Geoffrey Giles, Reno, NV, for appellant.

Neil E. Grad, Asst. Gen. Counsel Nevada Bar, Public Service Com'n of Nevada, Carson City, NV, for appellee.

Before: FLETCHER, KOZINSKI and TROTT, Circuit Judges.

FLETCHER, Circuit Judge:

Baker & Drake, Inc. ("Baker") appeals the district court's decision that the Bankruptcy Code, 11 U.S.C. § 1 *et seq.*, does not preempt Nevada Administrative Code, ch. 706, § 706.-371 (1992) [hereinafter "NAC 706.371"], a state regulation which requires that the drivers for taxicab companies be employees of the companies rather than independent contractors. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm.

## FACTS

Baker operates a taxicab company in Nevada. Until its reorganization under Chapter 11 of the Bankruptcy Code, Baker's approximately 200 drivers were employees driving cabs owned by Baker.

Claiming, among other things, to be burdened with numerous personal injury lawsuits, Baker filed for Chapter 11 reorganization on April 10, 1991. Part of Baker's proposed reorganization involved its employee-drivers becoming independent contractors who would lease their cabs from Baker. To be treated as independent contractors under agency and tort law, the drivers had to have considerable freedom in the performance of their jobs. This arrangement would shift the ultimate control over taxi services from Baker to the drivers themselves. Apart from the

effect it had on Baker's tort liability and insurance premiums, Baker stood to save a good deal of money because it would no longer. be liable for payroll taxes.

Baker's plan admittedly was inconsistent with state law. In Nevada, common motor carriers are required to obtain a "certificate of public convenience and necessity." Nev. Rev.Stat. § 706.386 (1987). These certificates are awarded based on considerations of public safety, efficiency, and financial responsibility. *Id.* § 706.151. Nevada Administrative Code section 706.371 specifically forbids the holder of such a certificate to lease a taxicab to another person, and states that "[e]very driver of a taxicab must be either the holder of a certificate or the employee of a holder of a certificate." NAC 706.371.

The bankruptcy judge not only approved the proposed reorganization plan, but also enjoined the Nevada Public Service Commission ("PSC") from enforcing NAC 706.371 against Baker. Order of January 14, 1992. The judge found that Nevada's regulation of the taxi business was not essential to the protection of the health and welfare of its citizens, and that the regulation conflicted with and frustrated the Bankruptcy Code's explicit goal of fostering reorganizations. Although the judge questioned the rationality of NAC 706.371, he ultimately couched his holding in terms of preemption:

> I'm setting the [state] law aside in this instance. I'm not applying it. The Constitution of the United States says that Congress shall prescribe bankruptcy laws. It has. It takes precedence in given situations, and I think this is one.

Transcript of Hearing, Jan. 13, 1992.

The PSC appealed to the federal district court on February 18, 1992, but did not seek a stay of the bankruptcy court's injunction.[1] After initial briefing, the district court remanded the matter to the bankruptcy court for the limited purpose of determining the impact of NAC 706.731 upon public health and safety. The bankruptcy court, after reviewing affidavits submitted by both parties, found that there were "affidavits going both ways," and that NAC 706.731 "has a rational basis.... [b]ut it's [only] one of several ways of dealing with the problem." Transcript of Hearing, July 10, 1992, at 38.

---

1. On July 24, 1992, the PSC belatedly moved the district court for an order temporarily restraining the bankruptcy court's injunction. In July,

the PSC moved the bankruptcy court for a stay of its injunction. Both motions were denied.

The district court disagreed: "[t]he record clearly shows that NAC 706.731 is designed to protect the public health, safety, and welfare." Order of Oct. 22, 1992, at 4. The district court found that under Baker's plan, the PSC would be forced to increase the size of its staff, because it would now have to deal individually with 200 independent contractors instead of with one employer that supervised 200 employees. *Id.* at 5. The court also found that since Baker would no longer be primarily responsible for providing liability insurance, the public would be at risk. The district court concluded that NAC 706.371 addressed health and safety issues in addition to economic matters, and that the bankruptcy court had erroneously found that its injunction would not interfere with legitimate state interests. On these grounds, the district court held that NAC 706.731 was not preempted by the federal Bankruptcy Code, and vacated the bankruptcy court's injunction. *Id.* at 6–7. Baker appeals.

## DISCUSSION

### I. *Mootness*

■ Baker promptly sought and obtained a stay of the district court's decision vacating the bankruptcy judge's injunction. Minute Order of Nov. 5, 1992. The PSC, on the other hand, did not seek a stay of the bankruptcy court's injunction, or of the implementation of Baker's Chapter 11 plan. Baker, Baker's drivers, and Baker's creditors proceeded with the implementation of the reorganization plan following its approval in January of 1992. Baker's drivers allegedly have taken the steps required of all self-employed independent contractors under Nevada's tax and licensing laws. The district court rejected Baker's argument that these circumstances make the case moot because no meaningful relief can be given. Mootness is a jurisdictional issue which we review de novo. *See Friends of the Payette v. Horseshoe Bend Hydroelectric Co.,* 988 F.2d 989, 996 (9th Cir.1993); *In re Castlerock Properties,* 781 F.2d 159, 161 (9th Cir.1986).

■ The classic example of mootness in the bankruptcy context is a case in which the debtor has failed to seek a stay of foreclosure and the debtor's property has been sold. The transfer to a third party precludes meaningful relief. *See In re Onouli–Kona Land Co.,* 846 F.2d 1170 (9th Cir.1988).

■ We also dismiss an appeal as moot if a party opposing a reorganization plan has failed to obtain a stay pending appeal, and the plan has been carried out to "substantial culmination." *In re Roberts Farms, Inc.,* 652 F.2d 793 (9th Cir.1981); *see In re Public Serv. Co. of New Hampshire,* 963 F.2d 469 (1st Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). In *Roberts Farms,* where the plan had "been so far implemented that it [was] impossible to fashion effective relief for all concerned," and where a disapproval of the plan at the appellate level "would do nothing other than create an unmanageable, uncontrollable situation for the Bankruptcy Court," the appeal was dismissed as moot. *Roberts Farms,* 652 F.2d at 797.

■ Failure to obtain a stay, standing alone, is often fatal but not necessarily so; nor is the "substantial culmination" of a relatively simple reorganization plan. *Public Service Co. of New Hampshire,* 963 F.2d at 473 & n. 13. In both *Roberts Farms* and *Public Service Co. of New Hampshire,* no stays were obtained and reorganization plans for complex, multi-million dollar debtors had proceeded almost to completion. The courts found themselves powerless to "unscramble the eggs" and grant effective relief:

> the innumerable transfers legitimately effected to and among innocent third parties in the absence of a stay, and in reliance on the order of confirmation and the rate agreement challenged on appeal ... plainly represent so substantial a consummation of the reorganization plan as to render the requested appellate relief impracticable.

*Public Serv. Co. of New Hampshire,* 963 F.2d at 474.

On the other hand, in *In re Spirtos,* 992 F.2d 1004, 1006 (9th Cir.1993), we found the *Roberts Farms* line of cases inapplicable. We could fashion effective relief simply by ordering the debtor to disburse money which had been withheld as exempt from the creditors because the case did not involve the rights of third parties not before the court. *Id.* at 1007; *see also In re International Envtl. Dynamics, Inc.,* 718 F.2d 322, 325–26 (9th Cir.1983) (appeal not moot where court of appeals could simply order attorney, who was party to the appeal, to repay fees he had won in bankruptcy court).

■ This case falls between the extremes. Here, unlike in *Spirtos*, third parties are involved: the taxi drivers, in reliance on the bankruptcy court's order have taken steps to become independent contractors.[2] But unlike *Roberts Farms* and *Public Serv. Co. of New Hampshire*, Baker's reorganization plan is not a complex, billion-dollar affair that has affected "innumerable" third parties. Moreover, the transfer of property to the cab drivers has been by lease, not sale.

Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable. *Public Serv. Co. of New Hampshire*, 963 F.2d at 473 & nn. 11–12 (citing, *inter alia, Roberts Farms*, 652 F.2d at 798). We must therefore decide whether it would be practical and equitable for Baker's drivers to reassume employee status. They have undertaken some effort and expense, but Baker has not submitted any information about the extent of their expenditure.[3] We are certain that Baker's claim that the cabbies have "committed their financial futures" to their independent contractor status, making disapproval of the plan impossible, Appellant's Opening Brief at 7, is unsupported and overblown. None of the dire consequences Baker predicts[4] seem severe enough to render relief impracticable. Were the bankruptcy court's injunction permanently vacated, it would suffice to treat the independent contractor arrangement as valid for the two years during which the injunction was in place.

In sum, we are not faced with a situation in which we have the impossible task of putting Humpty Dumpty together again. It would not be impractical to vacate the bankruptcy judge's stay and to require Baker and its drivers to comply with Nevada's regulations. We reject Baker's claim that this appeal is moot.

■ On July 13, 1993, the Nevada Legislature enacted Senate Bill 561, which permits cab companies like Baker to lease their cars to independent contractor drivers, and requires the PSC to promulgate regulations governing this practice. *See* S. 561, 67th Sess. § 3 (1993) (mandating the PSC to adopt health, safety, insurance, and liability regulations under the new law). On January 6, 1994, the PSC requested that oral argument in this case be suspended, because Senate Bill 561 might moot the case. We denied the PSC's request, Order of Jan. 14, 1994, and now elaborate our rationale.

Although Senate Bill 561 authorizes cab companies to lease cabs to their drivers, it does not require the PSC to adopt standards which would necessarily result in Baker's ability to continue its particular leasing/independent contractor arrangement under the plan. The PSC might promulgate regulations under which Baker's current arrangement would continue to be illegal. Because the Bankruptcy Court's injunction remains critical to the implementation of the reorganization plan, it's still very much a live issue as to whether the Nevada regulations are preempted.

## II. *Preemption*

■ "It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough Cty. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)). Although the bankruptcy court was initially skeptical about confirming a reorganization plan premised upon a violation of NAC 706.371, the court ultimately concluded that the Bankruptcy Code preempted state law in this case. The district court rejected this conclusion. Whether a state statute is preempted is a question of law which we review de novo. *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir.1993).

---

2. Baker also points to "numerous pre-petition personal injury claimants" who have expended time and money to resolve their claims through an arbitration procedure established under the plan. However, Baker first mentions these claimants in its Reply Brief, at page 3 n. 2, and gives no specifics with regard to their numbers, their claims, or how far along in the claims-resolution process they have come. This information is therefore too vague to be given much weight in our mootness analysis.

3. Baker claims the drivers were required to "set up self-employment accounts with government agencies, begin keeping books and records, and generally do the things that are required of independent businessmen." Appellant's Opening Brief at 7.

4. *See* Reply Brief at 3–4 (suggesting, *inter alia*, that if injunction is vacated, it will be impossible to calculate back taxes for the two years during which it was in effect).

In considering a preemption claim, we look first to the intent and sweep of the federal statute. *See Holman,* 994 F.2d at 668. The statute's preemptive intent may be either express or implied:

Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375 (citations omitted); *see also Louisiana Public Serv. Comm'n v. FCC,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986).

Baker claims the Bankruptcy Code impliedly preempts Nevada's regulation of taxi services. *Hillsborough County* indicates that there are, at a minimum, four separate but related types of implied preemption. Baker does not indicate clearly the theory upon which it wishes to rely. We can, however, quickly rule out the notion that the Bankruptcy Code is "sufficiently comprehensive" to allow the inference that Congress "left no room" for state regulation of taxicab lease arrangements. Similarly, the federal interest in such arrangements is not "so dominant" as to preclude state laws on the same subject. Nor would compliance with

both the Nevada regulations and the Bankruptcy Code be a "physical impossibility." Baker's position must therefore be that NAC 706.371 "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Bankruptcy Act, and thus any implied preemption must be based on actual conflicts.

The two Supreme Court cases cited by the parties, *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), are helpful to our analysis, but not dispositive. In *Perez,* the Arizona legislature passed a law stating that "discharge in bankruptcy . . . shall not relieve the debtor from any of the requirements" of the Arizona Motor Vehicle Safety Act—including liability for an underinsured motorist who causes an accident. *See Perez,* 402 U.S. at 642, 91 S.Ct. at 1707. Noting that the Arizona statute thus intentionally carved a direct exception from the federal bankruptcy law, the Court invalidated the provision, saying, "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." 402 U.S. at 652, 91 S.Ct. at 1712.

In *Midlantic,* the bankruptcy court allowed Midlantic Bank to abandon a toxic waste site as a cost-shaving part of its reorganization plan. The abandonment was authorized pursuant to 11 U.S.C. § 554(a), but was in direct contravention of New Jersey's environmental regulations. The Supreme Court held that the Bankruptcy Code did not preempt "a state statute or regulation that is *reasonably designed to protect the public health or safety* from identified hazards." 474 U.S. at 507, 106 S.Ct. at 762 (emphasis added).

As we view these cases, they suggest that federal bankruptcy preemption is more likely (1) where a state statute facially or purposefully carves an exception out of the Bankruptcy Code, or (2) where a state statute is concerned with economic regulation rather than with protecting the public health and safety. With these principles in mind, we first note that NAC 706.371 makes no reference to the Bankruptcy Code, and that its subject matter is unrelated to the Bankruptcy Code. Second, while NAC 706.371 may not be as essential to the protection of health and safety as, for example, toxic waste

laws, it was promulgated in part as a safety measure, and its substantive provisions do not facially belie that goal. On the contrary, the district court found that the regulation was reasonably designed to protect public safety.

At most, Nevada's prohibition on taxicab leasing makes a successful reorganization more difficult *in Baker's particular case.* This is not the type of "obstacle" or "frustration" envisioned in the Supreme Court's cases on preemption. In *Perez,* for example, Arizona's statute was preempted because it sought to carve out a broadly applicable exception to the Bankruptcy Code's policy of giving debtors a "new opportunity in life." *Perez,* 402 U.S. at 648, 91 S.Ct. at 1710 (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). Baker, in contrast, argues only that NAC 706.371 frustrates the goals of the Bankruptcy Code in its particular case.

Simply making a reorganization more difficult for a particular debtor,[5] however, does not rise to the level of "stand[ing] as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988); *cf. Hillsborough County,* 471 U.S. at 721, 105 S.Ct. at 2379. Congress's purpose in enacting the Bankruptcy Code was not to mandate that *every company* be reorganized *at all costs,* but rather to establish a preference for reorganizations, where they are legally feasible and economically practical. Thus, if compliance with NAC 706.371 were to render Baker financially unable to reorganize, neither Baker nor Nevada would thereby be violating any provision of the Bankruptcy Code. This situation differs from clashes which can arise between state environmental regulation and federal environmental law, for example, where compliance with one regime constitutes a violation of the other. As noted above, Baker's is not a case where "compliance with both federal and state regulations is a physical impossibility." *Hillsborough County,* 471 U.S. at 713, 105

S.Ct. at 2375 (internal quotation marks omitted).

Nor is Baker's case one in which the bankruptcy court has simply enjoined a state agency's discretionary decision to disapprove some element of a particular reorganization plan. In *In re Metro Transportation Co.,* 64 B.R. 968 (Bankr.E.D.Pa.1986), for instance, the bankruptcy court exercised its general powers under 11 U.S.C. § 105(a) to enjoin the Pennsylvania Public Utilities Commission ("PPUC") from recalling 800 taxicab operator certificates. The PPUC based its recall order on a discretionary decision to disapprove the taxi company's self-insurance plan. The *Metro Transportation* court noted both that the PPUC's own attorneys admitted that the self-insurance scheme was adequate, and that the PPUC's action would result in the loss of one-half of Philadelphia's cab service. *Id.* at 973–74. It therefore found that "extraordinary" circumstances justified its injunction of the PPUC's administrative action. *Id.* at 974. In Baker's case, however, we are not reviewing a discretionary agency action which has been found ungrounded and arbitrary, as in *Metro Transportation.* Rather, the Nevada PSC seeks to enforce a clearly worded regulation, which is of broad and general applicability, which unquestionably applies to Baker, and which was promulgated before the present action developed. The bankruptcy court's injunction of PSC enforcement of this regulation constitutes a much greater intrusion into state power than the *Metro Transportation* court's preemption of a single, discretionary, and arguably arbitrary decision.

## CONCLUSION

The Bankruptcy Code does not preempt NAC 706.371. Nevada's ban on taxi leasing is a broadly applicable regulation, not an individual, discretionary agency decision directed only at Baker. Moreover, NAC 706.371 is not just an economic regulation, but one reasonably intended to secure the public convenience and safety. Most importantly, it does not directly conflict with the

---

5. Baker has not shown that complying with NAC 706.371 would make a successful reorganization impossible in its case.

purposes of the Bankruptcy Code in any way which could be generalized beyond the particular facts of the present case. The fact that a particular debtor's Chapter 11 reorganization is made more difficult because of compliance with otherwise valid state regulation is not a sufficient basis to invoke preemption.

We have held in a different context that a bankruptcy trustee must "manage a business in accordance with state law, as any other person must." *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n,* 997 F.2d 581, 592 (9th Cir.1993) (citation omitted). Baker's reorganization plan likewise must comply with Nevada law.

AFFIRMED.