**In re PACIFIC GAS AND ELECTRIC CO., Appellant, Cross–Appellee, Debtor and Debtor in Possession.**

No. C–02–1550 VRW.

United States District Court,
N.D. California.

June 24, 2002.

Amy E. Margolin, Ceide Zapparoni, James L. Lopes, Jeffrey L. Schaffer, Howard, Rice, Nemerovski, Canady, Falk & Rab, San Francisco, CA, for Pacific Gas and Electric Co.

Alan S. Grover, Dewey Ballantine, LLP, Houston, TX, Laurence H. Tribe, Cambridge, MA, Michael Kessler, Weil Gotshal & Manges LLP, for PG & E Corp.

Richard Roos–Collins, Berkeley, CA, for California Hydropower Reform Coalition.

Margarita Padilla, Attorney General of the State of California, Oakland, CA, Paul J. Pascuzzi, Steven H. Felderstein, Filderstein, Fitzgerald, Willoughby & Pasc, Sacramento, CA, for People of the State of California.

Allan H. Ickowitz, Donna M. Balbin, Nossaman, Guthner, Knox & Elliot, Los Angeles, CA, for City of Redwood City, CA.

Frank V. Zerunyan, Irving Sulmeyer, Victor A. Sahn, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, CA, for California Counties of Alameda, Fresno, Kern, Sacramento, San Luis Obispo, Santa Barbara, Santa Clara, Sisiyou, Sonoma and the City and County of San Francisco.

D. Cameron Baker, Theresa L. Mueller, San Francisco, CA, for City and County of San Francisco.

Douglas K. Chang, U.S. Attorney's Office, San Francisco, CA, Karl J. Fingerhood, U.S. Department of Justice, Environmental & Natural Resources Division, Thomas S. Sansonetti, U.S. Department of Justice, Environment & Natural Resources Division, Environmental Defense Sections, Washington, DC, for U.S. on behalf of the U.S. Environmental Protection Agency.

Paul S. Aronzon, Tweed, Hadley & McCoy, LLP, Los Angeles, CA, for Official Committee of Unsecured Creditors.

Alan Kornberg, Brian S. Hermann, Paul, Weiss, Rifkind, Wahron & Garrison, New York City, Arocles Aguilar, Gary M. Cohen, Michael M. Edson, California Public Utilities Commission, San Francisco, CA, for California Public Utilities Commission.

Charlton Bonham, Richard Roos–Collins, Albany, CA, for California Hydropower Reform Coalition.

Antonio R. Anziano, Barbara J. Wills, Bruce A. Behrens, David Gossage, Department of Transportation, for People of State of California, ex rel. Department of Transportation.

Stephen L. Johnson, Office of the U.S. Trustee, San Francisco, CA, for Linda Ekstrom Stanley.

Dennis Montali, U.S. Bankruptcy Court, San Francisco, CA, pro se.

USBC Manager, San Francisco, CA, pro se.

## ORDER

WALKER, District Judge.

The People of the State of California, the California Public Utilities Commission (CPUC) and the City and County of San Francisco (collectively, objectors) move to dismiss for lack of appellate jurisdiction the appeal of Pacific Gas and Electric Company (PG & E) and its parent company, PG & E Corporation, from the bankruptcy court's order entered on March 18, 2002. Doc # 45. PG & E also moves, in the alternative, for leave to file an interlocutory appeal of that order pursuant to 28 USC § 158(a)(3).

### I

On April 6, 2001, PG & E filed a voluntary petition under chapter 11 of title 11 of the United States Code (bankruptcy code) in the United States Bankruptcy Court for the Northern District of California. On December 19, 2001, PG & E and its parent company filed their first amended plan (December plan) of reorganization and their first amended disclosure statement. See RJN, Exhs C and D.

Central to the December plan is the disaggregation of PG & E, which involves the transferring of PG & E's assets to four new companies to be owned by its parent:

ETrans, which would contain PG & E's electric transmission assets; GTrans, PG & E's gas transmission assets; Gen, PG & E's generation assets; and the Reorganized PG & E, which would continue in the retail sale and distribution of electricity and gas. As a result of this restructuring, according to PG & E, three of the new entities will no longer be subject to the regulatory jurisdiction of the CPUC. Rather, the entities involved in electric transmission, interstate gas transmission and electric generation will be under the exclusive ratemaking jurisdiction of the Federal Energy Regulatory Jurisdiction (FERC).

The California parties objected to this proposed restructuring, arguing that such restructuring would violate a variety of state laws. Objectors contend, for example, that such disaggregation would violate a law, enacted in January 2001, which imposed a moratorium on the sale of generation facilities by prohibiting an owner of electric generation facilities from disposing of any such facilities until January 1, 2006. Cal Pub Util Code § 377. Objectors also contend that several of the critical transactions proposed in the December plan would require state regulators to review and approve them under state health, safety, welfare and environmental statutes, including the California Environmental Quality Act (CEQA). Objectors filed objections to PG & E's disclosure statement, arguing that the plan (1) impermissibly sought to preempt state and federal law not subject to preemption and (2) sought declaratory and injunctive relief against California in violation of principles of sovereign immunity.

In response to these objections, PG & E asserted that all state—and most if not all other non-bankruptcy—laws are expressly preempted by section 1123(a)(5) of the bankruptcy code insofar as they purport to prohibit, veto or nullify transactions necessary to implement the restructuring proposed in the plan.

On February 7, 2002, the bankruptcy court issued its memorandum decision regarding preemption and sovereign immunity. RJN, Exh B. In this decision, the bankruptcy court rejected PG & E's "across-the-board, take-no-prisoners" claim that section 1123(a)(5) allowed it to "disaggregate with unfettered preemption of any contrary nonbankruptcy law." *Id.* at 46, 40. The bankruptcy court did not, however, reject PG & E's plan outright, but directed PG & E to submit a revised disclosure statement in which it more specifically describes the laws PG & E seeks to preempt and explains generally the reasons why PG & E believes it necessary to preempt said laws. The bankruptcy court, in fact, expressed its "belie[f] that the Plan could be confirmed if Proponents are able to establish with particularity the requisite elements of implied preemption;" and noted that "[i]f the Disclosure Statement is amended consistent with this Memorandum Decision, the court will approve it and let the Proponents test preemption at confirmation." *Id.* at 3.

At the end of its order, the bankruptcy court discussed the options for PG & E if it wished to seek review of the memorandum decision. See *id.* at 46–48. The bankruptcy court first noted that if PG & E wished, the bankruptcy court would enter an order disapproving the disclosure statement. Noting that the denial of approval of a disclosure statement is interlocutory, the bankruptcy court stated that PG & E would be required to attempt an appeal of an interlocutory order, which would rest within the discretion of the district court or the bankruptcy appellate panel. See *id.* at 47. The court also stated that, in the alternative, it would "consider a proper request to certify the order disapproving the Disclosure State-

ment under [FRCP] 54(b), made applicable by Fed R Bankr P 7054(a) and Fed R Bankr P 9014." *Id.*

PG & E thereafter pursued all options available for appellate review. On March 6, 2002, PG & E filed a second amended plan of reorganization and disclosure statement, which sought to preempt specified state statutes under the principles of implied preemption discussed in the memorandum decision. PG & E also filed a "protective" motion for leave to file an interlocutory appeal under 28 USC § 158(a)(3). Concurrently, PG & E filed a request for final judgment and/or order regarding the preemption ruling in the memorandum decision. PG & E asked the bankruptcy court to certify an order disapproving the disclosure statement on express preemption grounds for immediate appeal pursuant to FRCP 54(b) or, in the alternative, for an order disapproving the disclosure statement with findings supporting immediate interlocutory appeal.

On March 18, 2002, the bankruptcy court issued an order and judgment disapproving the disclosure statement and providing FRCP 54(b) certification, noting:

> The court has ruled on the issue of express preemption. Unless reversed on appeal, the law of the case has been established: there is no express preemption under 11 USC § 1123(a) of all state laws that conflict with the Plan or the Debtor's implementation of it if confirmed.

RJN, Exh A at 5.

PG & E's appeal timely followed. By way of the instant motion, the court must determine whether it, indeed, has jurisdiction over this appeal, which requires the court to consider whether FRCP 54(b) certification was proper.

## II

"[FRCP] 54(b) controls the analysis of finality of judgments for purposes of appeal in federal civil actions, including bankruptcy proceedings." *Belli v. Temkin (In re Belli),* 268 B.R. 851, 855 (9th Cir. BAP 2001). FRCP 54(b), which has been incorporated into the bankruptcy code by Fed R Bankr P 7054(a), provides that:

> When more than one claim for relief is presented in an action, * * * or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

A FRCP 54(b) certification of a ruling is treated as a final order, over which appellate jurisdiction in the district court exists "as of right," pursuant to 28 USC § 158(a)(1).

"When considering the wisdom of [FRCP] 54(b) certification in a given case, the trial court must first assess the finality of the disputed ruling." *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 43 (1st Cir.1988), citing *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980); *United States General, Inc. v. Albert,* 792 F.2d 678, 680–81 (7th Cir.1986); *Bank of New York v. Hoyt,* 108 F.R.D. 184, 186 (D.R.I. 1985). "As an adjunct to this inquiry, of course, it must be shown that the ruling, at a bare minimum, disposes fully 'of at least a single substantive claim.'" *Id.,* quoting, *Acha v. Beame,* 570 F.2d 57, 62 (2d Cir. 1978). After making the finality determination, the certifying court must then determine whether there is any just reason for delay in entering judgment. The certifying court's finality determination is generally reviewed de novo, while the weighing of the equities involved in the "just

reason for delay" determination is reviewed for an abuse of discretion, as long as the certifying court's reasoning is apparent from the certification opinion. See *Spiegel,* 843 F.2d at 44.

 In the Ninth Circuit, "[t]he present trend is toward greater deference to a * * * court's decision to certify under [FRCP] 54(b)." *Cadillac Fairview v. United States,* 41 F.3d 562, 564 n. 1 (9th Cir.1994), quoting *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 798 (9th Cir.1991). Moreover, in the bankruptcy context, courts adopt a pragmatic approach in applying the finality requirement, as "the idiosyncracies of bankruptcy sometimes make it difficult to discern whether orders entered in bankruptcy cases are final in the classic sense * * *." *In re Belli,* 268 B.R. at 854, citing *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *Elliott v. Four Seasons Props.,* 979 F.2d 1358, 1362–64 (9th Cir.1992). Under this pragmatic approach, courts apply the finality requirement of FRCP 54(b) and § 158(a) with more flexibility. " 'Flexible finality' focuses upon whether the order affects substantive rights and finally determines a discrete issue." *Id.,* citing *Dominguez v. Miller,* 51 F.3d 1502, 1506 (9th Cir.1995); *Frontier Props.,* 979 F.2d at 1363; 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed Prac & Proc § 3926.2 (1992).

### III

 Before the bankruptcy court, PG & E asserted that section 1123(a) of the bankruptcy code expressly preempts any non-bankruptcy law that may be otherwise applicable to the implementation of the plan and, particularly, the proposed restructuring transactions. In PG & E's words:

> Section 1123(a) of the Bankruptcy Code preempts any otherwise applicable non-

bankruptcy law that may be contrary to its provisions. Accordingly, a plan may contain certain provisions that would not normally be permitted under non-bankruptcy law. For example, section 1123(a)(5) of the Bankruptcy Code authorizes, among other things, the sale or transfer of assets by [PG & E] without the consent of the State or the [CPUC].

Disclosure Statement (RJN, Exh D) at 4:18–23.

PG & E also argued:

> The preemptive effect of the Confirmation Order extends to all statutes, rules, orders and decisions of the CPUC otherwise applicable to the Restructuring Transactions and the implementation of the Plan. In the Proponents' view, the Confirmation Order supersedes any statute, rule, order or decision that the CPUC might interpret to otherwise apply to the Restructuring Transactions and the implementation of the Plan whether specified or not.

*Id.* at 129:15–20.

> Section 1123 provides:
>
> (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
>
> \* \* \* \* \* \*
>
> (5) provide adequate means for the plan's implementation, such as—
>
> \* \* \* \* \* \*
>
> (B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;

Essentially, PG & E's claim is that this language reflects an express determination by Congress to preempt all state law that might otherwise apply to the restructuring transactions. Under this interpretation, among other things, the state law prohibi-

tion of transferring generation assets, expressed in Cal Pub Util Code § 377, would be per se inapplicable to the transferring of PG & E's generating assets to the new generation entity: Gen. Nor would authorization by the CPUC of the transfer of generation assets, pursuant to Cal Pub Util Code § 851, be necessary. Nor would a CEQA review of the transfer of assets be permitted. In short, if the confirmation plan were approved, disaggregation and the creation of the new limited liability companies to operate under FERC jurisdiction would proceed without any reference to state law prohibitions and requirements and without the need for the authorization of state regulators. Once restructured, however, the four entities would be subject to all applicable ongoing state and federal regulations.

As noted, in the February 7 memorandum decision, the bankruptcy court rejected this interpretation of section 1123(a), holding that this section did not allow PG & E to "disaggregate with unfettered preemption of any contrary nonbankruptcy law." Mem Dec (RJN, Exh B) at 40. If this were the extent of the bankruptcy court's ruling, this court's review of the FRCP 54(b) certification would be simpler, as the court has little doubt that an unqualified rejection of the preemption provisions of PG & E's plan would present a final determination of a discrete claim, thereby permitting appellate review as of right.

The bankruptcy court did not, however, finally reject PG & E's claims that the bankruptcy code preempted state laws standing as obstacles to the restructuring transactions. Rather, the bankruptcy court reserved for a future determination whether PG & E's plan could be confirmed under principles of *implied* preemption, principles which will be discussed in further detail below. The bankruptcy court,

in other words, did not foreclose the possibility that any and all state laws relating to the restructuring transactions could be preempted, upon an appropriate showing by PG & E.

■ The existence of this possibility complicates the analysis for this court because, as the objectors correctly note, generally the fact that ongoing action in the lower court may provide the exact relief requested in the appellate court, so that the need for appellate review would vanish, is treated "as a major negative in the [FRCP] 54(b) equation." *Spiegel,* 843 F.2d at 45.

In a related contention, objectors also assert, with some persuasiveness, that the theories of express and implied preemption in this case are not distinctly separate claims, but are merely "different sides of the same coin," offered as alternate grounds in support of the same relief and subsumed by a single critical inquiry, namely: "whether the structure and purpose of the Bankruptcy Code evince an intent by Congress to displace the laws PG & E claims are preempted." Obj Br at 5. Objectors are correct that the doctrines of express and implied preemption, at a high level of generality, are not easily distinguishable as applied to this case. Objectors are also correct that these theories of preemption are largely but alternate theories in search of a single result: preemption. Yet the court concludes that, considered with the proper degree of specificity, the bankruptcy court's rejection of PG & E's claim of express preemption presents a final determination of a discrete claim with definite, pronounced consequences, including altering and elevating PG & E's burden of proof, that no just reason for delay is present and that certification of this decision was, thereby, appropriate pursuant to FRCP 54(b).

By rejecting the claim that Congress expressly provided for the preemption of any state law otherwise applicable to the restructuring transactions, the bankruptcy court determined that applicable state laws could be preempted only if those laws are preempted by implication; if, in other words, otherwise applicable state laws "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Mem Dec (RJN, Exh B) at 13, quoting *Baker & Drake, Inc. v. Public Serv. Comm'n*, 35 F.3d 1348, 1353 (9th Cir.1994). In order to demonstrate implied preemption, under this standard, PG & E will have to meet an evidentiary burden not present under its claim of express preemption. PG & E will have to specify the state laws it believes are preempted by implication and support its contention that the execution of the purposes of the bankruptcy code would be hindered by the operation of those state laws. Under its theory of express preemption of any otherwise applicable state laws, however, PG & E must neither identify state laws with specificity, nor discuss those laws with reference to the purposes of the bankruptcy code.

Accordingly, as part of PG & E's elevated burden of proof, a demonstration of implied preemption will require PG & E to address issues that are flatly irrelevant to its express preemption claim. After identifying the relevant state laws, PG & E will have to address the purpose of the individual state law to be preempted, so that the bankruptcy court can apply a "balancing test," in which federal preemption will be more likely when the challenged state law involves economic regulation rather than health or safety. See *id.* at 14–15. As the bankruptcy court noted, under such a test, the state's environmental regulations may well pose a formidable hurdle to preemption. See *id.* at 32–33 n. 22 (noting that "preemption is particularly unlikely for environmental matters"). Under an implied preemption theory, therefore, PG & E will not only be required to meet a substantial burden of persuasion for each individual state law sought to be preempted, but will face a strong possibility that such burden will not be met for each state law.

In order to succeed on a claim of implied preemption, PG & E will also have to demonstrate that the otherwise applicable state law stands as "obstacle" to the accomplishment and execution of the purposes of the bankruptcy code. *Id.* at 41. Within this showing, it appears that the bankruptcy code will require PG & E to demonstrate that the proposed disaggregation itself is compelled by economic necessity. See *id.* at 31. In other words, the bankruptcy court will apparently proceed under the theory that state laws are not preempted as obstacles to accomplishing the purposes of the bankruptcy code, which includes allowing debtors to restructure, unless those laws *must* be preempted, that is, unless restructuring was not feasible in a manner that complied with state law. This interpretation of the bankruptcy code may well be correct, but it is in stark contrast to the theory of express preemption argued by PG & E, with dramatic consequences for PG & E's required showing and its chance of success.

These considerations lead to the conclusion that disaggregation based on express preemption is a different claim from disaggregation based on implied preemption. "Different burdens may imply different 'claims.'" *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287, 293 (7th Cir.1992). Here, PG & E's burden under its theory of express preemption is considerably lighter than its burden of demonstrating implied preemption of each otherwise applicable law.

The difference between the theory of express preemption advocated by PG & E and the theory of implied preemption accepted by the bankruptcy court is a product of the bankruptcy court's determination of the proper construction of the statutory provision at issue: 28 USC § 1123(a)(5). The bankruptcy court determined that this section was merely a "directive" to the plan proponent about what types of things must be part of the proposed plan and not an "empowering" statute, affirmatively freeing the plan proponent from state law otherwise applicable to, among other things, the transfer of property. This statutory determination too indicates that the bankruptcy court reached a final determination of a discrete legal claim. As noted, to go forward below PG & E must operate under a legal theory imposing much different and higher evidentiary and persuasive burdens. On the other hand, if PG & E's statutory construction is correct, PG & E's December plan, as proposed, would be confirmable. See 3/18/02 Order (RJN, Exh A) at 3 ("The court has no doubt * * * that the Plan, dependent upon express preemption, is confirmable."). Accordingly, the court shares the bankruptcy court's view that PG & E's express preemption claim "is as much a claim for relief in the context of a proposed Chapter 11 reorganization plan as any other 'cause of action' in traditional litigation seeking relief." *Id.*

The court also determines that the bankruptcy court's determination that there is no just reason for delay is proper. The bankruptcy court examined both the "judicial administrative interests" disfavoring piecemeal appeals and the "equities involved." *Curtiss–Wright Corp.*, 446 U.S. at 8, 100 S.Ct. 1460. The court has already determined that the bankruptcy court's determination that the express preemption claim was severable from the other claims

was proper. The court also affirms the bankruptcy court's determination that potential mootness concerns are overwhelmed by the equities of this case, which suggest compelling reasons for advancing the potential resolution of this matter.

As the bankruptcy court noted:

> This is a Chapter 11 case of enormous significance to thousands of creditors owed billions of dollars. It is clearly one of the largest bankruptcies in United States history, and definitely the largest involving a public utility. An attempt by a utility to free itself from state regulation to the extent contemplated by the Plan is virtually without precedent. Further, PG & E expects to pay creditors in full with interest, but already this case is nearly a year old and further delay should be avoided. Creditors have a real economic interest in a speedy resolution of this case. If a court on appeal believes that express preemption is available here, the rule of law should be settled forthwith.

3/18/02 Order (RJN, Exh A) at 6.

 Finally, the court rejects objectors' contention that jurisdiction is not proper because judgment was not set forth on a separate document, pursuant to FRCP 58. The "sole purpose" of the separate document requirement is to establish a reference point for determining the timeliness of appeal. *Fiore v. Washington Cty. Comm. Mental Health Ctr.*, 960 F.2d 229, 233 (1st Cir.1992). The court first notes that judgment was, in fact, set out in a document separate from the memorandum decision challenged on appeal. To the extent there is any defect here because of extraneous material in the entry of judgment, it is one entirely of form. Absent prejudice to the objectors, this attempt to defeat jurisdiction should not be countenanced. See *Harris v. McCarthy*, 790

F.2d 753, 756–57 (9th Cir.1986). There is, of course, no prejudice here; the date of the entry of judgment is not in question.

## IV

■ For the foregoing reasons, the court determines that the bankruptcy court's FRCP 54(b) certification was proper and, consequently, that appellate jurisdiction exists as of right, pursuant to 28 USC § 158(a)(1). Accordingly, the court need not consider PG & E's "protective" motion for leave to file an interlocutory appeal, pursuant to section 158(a)(3). Nevertheless, the court notes that even if the bankruptcy court's FRCP 54(b) certification was not proper, the court would still be inclined to exercise its discretion to grant leave to hear this appeal.

In applying section 158(a)(3) courts generally borrow the standards of 28 USC § 1292(b), which provides for the discretionary review by circuit courts of certain interlocutory district court orders. See, e.g., *In re Belli*, 268 B.R. at 858. Section 1292(b) provides, in relevant part:

> When a district judge * * * shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

■ Pursuant to this standard, "[g]ranting leave is appropriate if the order involves a controlling question of law where there is substantial ground for difference of opinion and when the appeal is in the interest of judicial economy because an immediate appeal may materially advance the ultimate termination of the litigation." *Kashani v. Fulton*, 190 B.R. 875, 882 (9th Cir. BAP 1995). As discussed above, PG & E's appeal presents a control-

ling issue of law. Among other things, the bankruptcy court has expressed its opinion that if PG & E's theory of express preemption is correct, the December plan would be confirmable as a matter of law. See 3/18/02 Order (RJC, Exh A) at 3. Moreover, as also discussed above, resolving this issue expeditiously advances the interest of judicial economy and, particularly if the appeal is resolved in PG & E's favor, will hasten the resolution of PG & E's chapter 11 case, to the benefit of creditors and debtor alike.

Objectors contend that there is no substantial ground for difference of opinion on the merits of PG & E's express preemption claim. Objectors, of course, are confident in their position, but the court is not persuaded that this position is beyond substantial dispute. Indeed, a preliminary review of the arguments on the merits indicates that the case most directly on point, *Public Service Co. of New Hampshire v. New Hampshire (PSNH)*, 108 B.R. 854 (Bankr.D.N.H.1989), accepted in large part the theory of express preemption asserted by PG & E below. The bankruptcy court declined to follow *PSNH*, relying instead on the Ninth Circuit's decision in *Baker & Drake v. Public Serv. Comm'n*, 35 F.3d 1348 (9th Cir.1994), but it does not appear that a theory of express preemption, pursuant to section 1123(a), was advanced in that case. See *id.* at 1353 ("Baker claims that the Bankruptcy Act *impliedly* preempts Nevada's regulation of taxi services") (emphasis added).

Accordingly, the court determines that there does appear to be substantial difference of opinion on the controlling issue of law raised by PG & E. As resolution of PG & E's express preemption claim will substantially advance the ultimate termination of PG & E's bankruptcy case, the court determines that, in the event the bankruptcy court's FRCP 54(b) certification

was error, the court would exercise its discretion to grant leave to hear this appeal.

### V

In sum, objectors' motion to dismiss for lack of jurisdiction (Doc # 45) is DENIED. A hearing on PG & E's appeal is hereby SET for a hearing date on August 14, 2002, at 10:00 am.

IT IS SO ORDERED.