124 F.3d 1140
 38 Fed.R.Serv.3d 1165, 31 Bankr.Ct.Dec. 549,
Bankr. L. Rep. P 77,489,
97 Cal. Daily Op. Serv. 7210,
97 Daily Journal D.A.R. 11,664
 In re: VIRTUAL VISION, INC., a Washington Corporation,
Debtor. Virtual Vision, Inc., a Washington
Corporation, Plaintiff,
v.
PRAEGITZER INDUSTRIES, INC., an Oregon Corporation,
Defendant-Appellant,
D. Blech & Co. Inc., a New York Corporation, Defendant-Appellee.
 No. 96-35410.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1997.
Decided Sept. 8, 1997.
 
 Susan E. Anderson, Teresa H. Pearson, Greene & Markley, Portland, OR, for plaintiff-appellant.
 Shalom Jacob, Shereff, Friedman, Hoffman & Goodman, New York City, Joseph E. Shickich, Jr., Graham & James LLP/Riddell Williams P.S., Seattle, WA, for defendant-appellee.
 Appeal from the United States District Court for the Western District of Washington. William L. Dwyer, District Judge, Presiding. D.C. No. CV-95-01082-WLD.
 Before: WRIGHT, D.W. NELSON and KOZINSKI, Circuit Judges.
 D.W. NELSON, Circuit Judge:
 
 
 1
 Praegitzer Industries appeals the decision of the district court reversing the bankruptcy court's denial of Blech & Company's Rule 60(b)(4) motion to vacate the default judgment in favor of Praegitzer. The bankruptcy court had entered the default judgment on account of Blech's failure to comply with a discovery request. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the district court's decision.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 This case arises from bankruptcy proceedings initiated by Virtual Vision, Inc. Praegitzer and Blech are two of Virtual Vision's creditors with competing claims to Virtual Vision's assets.
 
 
 3
 After filing for Chapter 11 bankruptcy, Virtual Vision commenced this adversary proceeding to determine the priority of the security interests held by Praegitzer and Blech. On August 25, 1994, at the pretrial conference, the bankruptcy court announced that it had decided to expedite the proceeding due to the high-technology nature of the debtor's business. The court set the trial date for October 18, 1994, and stated that responses to discovery requests should be provided within fifteen days of the request. On the following day, the court issued a written order to the same effect. The order further stated that a possible consequence of failure to comply with a discovery request would be the entry of a default judgment. Blech did not object to the expedited schedule.
 
 
 4
 On September 13, 1994, Praegitzer served a request for production via fax to the law firm serving as Blech's counsel, Bucknell Stehlik. Responses were due September 28, 1994, in accord with the district court's order. Blech failed to produce the documents on September 28.
 
 
 5
 On September 30, Praegitzer moved for an order compelling a response to its request. On the same day, Bucknell Stehlik moved to withdraw as Blech's counsel and sought postponement of the adversary proceedings due to Blech's "recent, well-publicized financial setbacks." Bucknell stated that as a "practical matter," because of Blech's dire financial condition, it could not continue representing Blech and could not respond to the discovery requests already due.
 
 
 6
 On October 7, the bankruptcy court considered Praegitzer's motion to compel discovery and Bucknell's motion to withdraw as counsel. During the hearing, Bucknell noted that it had "sent copies of various correspondence and notices of deposition to [Blech] by fax and mail" but that it was "getting no response."
 
 
 7
 The court authorized Bucknell's withdrawal but declined to delay the proceedings. Instead, the court ordered Blech to produce the requested documents by October 12 (within three business days). The order stated that if Blech did not comply by that time, the court would enter a default judgment in favor of Praegitzer. The court explained in the order that its reason for compelling discovery so quickly was that "a continuance of the trial would be detrimental to the debtor's ability to reorganize." Although authorized to withdraw from the case, Bucknell received the discovery order in its capacity as attorney for Blech and sent notice of the order to Blech by fax and by mail.
 
 
 8
 On October 12, Blech had failed to produce the documents and the court consequently entered a default judgment in favor of Praegitzer. Approximately six months later, on April 27, 1995, Blech moved to vacate the judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. Following a hearing, the bankruptcy court denied the motion. Blech appealed the denial of the motion to vacate, and the district court reversed. The district court determined that the default judgment had violated Blech's due process rights. The court reasoned that in light of Blech's sudden collapse, Blech's failure to comply with the discovery order was due to circumstances beyond its control. Further, the district court maintained, Blech had received inadequate notice of the impending default judgment. Praegitzer appealed. For the reasons discussed below, we reverse the decision of the district court and hold that Blech's constitutional rights were not violated.
 
 STANDARD OF REVIEW
 
 9
 We independently review the bankruptcy court's ruling without deference to the district court's decision. Friedkin v. Sternberg, (In re Sternberg ), 85 F.3d 1400, 1404 (9th Cir.1996). The bankruptcy court's denial of Blech's Rule 60(b)(4) motion to set aside the default judgment as void is a question of law reviewed de novo. United States v. $277,000 U.S. Currency, 69 F.3d 1491, 1493 (9th Cir.1995).
 
 ANALYSIS
 I. Jurisdiction
 
 10
 As a threshold matter, we must decide whether we have jurisdiction to consider this appeal. Blech argues that because the district court remanded to the bankruptcy court for further proceedings, the district court's order was interlocutory and therefore unappealable. We rejected this precise argument under nearly identical circumstances in Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.), 113 F.3d 1091, 1097-99 (9th Cir.1997). In Coupon Clearing, we assumed jurisdiction over a district court decision remanding for further proceedings before the bankruptcy court. Id. at 1099. We held that jurisdiction is properly exercised where the central issue is legal in nature and its resolution could dispose of the case. Id. at 1098. Because the propriety of the bankruptcy court's ruling on Blech's 60(b)(4) motion is a legal question and because reinstatement of the default judgment would dispose of this case, Blech's jurisdictional claim must fail.
 
 II. Due Process
 
 11
 The central issue in this case is whether the bankruptcy court's default judgment in favor of Praegitzer violated Blech's constitutional right to due process. Blech first argues that the default judgment was constitutionally infirm because the bankruptcy court did not find that Blech's failure to comply with the discovery request was due to willfulness, bad faith, or fault. Second, Blech contends that it received constitutionally inadequate notice of the possibility that a default judgment would be entered. We address each of Blech's due process claims in turn.
 
 A. Failure to Comply with Discovery Order
 
 12
 With respect to the first argument, we disagree with Blech that the bankruptcy court was required to make a factual finding of willfulness, bad faith, or fault before imposing the default judgment. The critical question is whether there is record evidence that noncompliance was due to willfulness, bad faith, or fault, not whether the trial court made a finding to that effect. See Hyde & Drath v. Baker, 24 F.3d 1162, 1166-69 (9th Cir.1994); Henry v. Gill Industries, Inc., 983 F.2d 943, 948-49 (9th Cir.1993); Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1340 (9th Cir.1985); Munoz-Santana v. INS, 742 F.2d 561, 564 (9th Cir.1984); Thomas v. Gerber Productions, 703 F.2d 353, 356-57 (9th Cir.1983).
 
 
 13
 It is well established in this circuit that " 'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." Henry v. Gill Industries, 983 F.2d 943, 948 (9th Cir.1993) (quoting Fjelstad v. American Honda Motor Co., 762 F.2d 1334, 1341 (9th Cir.1985)). Here, the record clearly indicates that Blech's disobedient conduct was well within its control.
 
 
 14
 First, the record provides considerable evidence that Blech had not completely collapsed at the time of its failure to comply with the discovery order: Blech was equipped with one or two working phones; Blech had bank and brokerage accounts that had been neither frozen nor liquidated; and Blech retained a "select few" employees. Furthermore, Blech does not dispute that on September 30, nine days after its alleged collapse, the company was functioning well enough to negotiate the sale of all its customer accounts to another brokerage firm.
 
 
 15
 There are other indications in the record that Blech was capable of responding to the discovery order. Blech knew well in advance of the default judgment that both its own financial ruin and its discovery obligations with respect to the litigation were impending. The record shows that Blech had experienced financial difficulties as early as April 1994, and those problems continued through the five months leading to what it claims amounted to a "total and almost sudden collapse" on September 21, 1994. Blech received the first discovery request from Praegitzer on September 13, eight days before the alleged collapse. Moreover, Blech was warned by the bankruptcy judge as early as August 26 that unless responses to discovery requests were provided within fifteen days of the request, the court might order a default judgment. Blech never objected to this expedited schedule. Because Blech was apprised well in advance of its "collapse" both of its declining financial situation and of its pressing litigation responsibilities, compliance with the discovery order was well within its control.
 
 B. Notice of Impending Default Judgment
 
 16
 We reject Blech's second due process claim, that notice of the impending default judgment was constitutionally inadequate, for similar reasons. The bankruptcy court's October 7 order compelling response to Praegitzer's discovery request within three business days (five days total), which was communicated to Blech by fax, provided Blech with sufficient time to comply, especially because Blech knew of the impending request well in advance of October 7. As mentioned above, Praegitzer's initial request was issued nearly a month before the default judgment for noncompliance was finally imposed. The case at bar is easily distinguished from In re Center Wholesale, Inc., 759 F.2d 1440, 1450 (9th Cir.1985), where we held that the litigant's receipt of one-day notice was constitutionally inadequate.
 
 
 17
 Blech argues that the use of a fax was a constitutionally inadequate method of notice because Blech's attorney, Bucknell Stehlik, had testified immediately before the discovery order was issued that it had tried to reach its client by fax and by mail, but was "getting no response." Although this argument has some appeal, it must fail for two reasons.
 
 
 18
 First, although Bucknell Stehlik never received a response from Blech, there is no indication in the record that Bucknell Stehlik's fax transmissions were not received by Blech. Moreover, even if Blech never received the fax, Blech's contention that it was entitled to actual notice of the impending default judgment is without merit. See Kirk v. INS, 927 F.2d 1106, 1108 (9th Cir.1991) ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all the facts, notice of which can be charged upon the attorney.") (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962)). In our view, Bucknell Stehlik's good faith and reasoned efforts to notify Blech by fax and by mail meet the Supreme Court's standard for constitutionally adequate notice. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").
 
 
 19
 Second, and more importantly, Blech was in part responsible for ensuring that he received communications from his attorney. Blech was not in total collapse, Blech knew that it had failed to comply with Praegitzer's initial discovery request, yet Blech took no measures to keep informed of its obligations pursuant to the expedited litigation schedule. We have made it abundantly clear in previous cases that litigants must make some reasonable effort to remain in contact with their attorneys and apprised of the status of their cases. In United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1270 (9th Cir.1985), for example, we held that dismissal for noncompliance with a discovery request is warranted where the litigant "has not shown that he had advised his counsel of his whereabouts so that he could be reached on reasonable notice." As we explained in La Cage Aux Folles, the litigant's conduct "indicated a lack of diligence in keeping abreast of the status of his case." Id. See also Henry v. Gill Industries, Inc., 983 F.2d 943, 949 (9th Cir.1993) (rejecting challenge to trial court's dismissal where litigant had ignored correspondence from counsel); Pretzel & Stouffer v. Imperial Adjusters, 28 F.3d 42, 45 (7th Cir.1994) ("Maintaining communication during the course of litigation is the responsibility of both attorneys and their clients. Mere lack of communication does not excuse compliance with the rules, or from the penalties for failing to do so."). Given that Blech made no effort to maintain communication with its attorney, and given that Blech utterly failed to "keep abreast of the status" of its case when it was able to do so, it is clear that notice to Blech of the impending default judgment was constitutionally adequate.
 
 CONCLUSION
 
 20
 For the foregoing reasons, we have jurisdiction to consider this appeal and we hold that the bankruptcy court's default judgment did not violate Blech's constitutional right to due process. Accordingly, the district court's decision is reversed with directions to reinstate the bankruptcy court's default judgment.
 
 REVERSED