FISHER, Circuit Judge.
 

 This appeal arises from an involuntary Chapter 7 bankruptcy petition filed by eight putative creditors of Focus Media, Inc. (“Focus”). These creditors consisted of appellees National Broadcasting Company, Inc. (“NBC”), ABC Inc. (“ABC”) and Paxson Communications, Inc. (“Paxson”), as well as five affiliates of ABC (collectively with appellees, “petitioning creditors”). Focus appeals the district court’s order affirming the bankruptcy court’s orders (1) granting the petitioning creditors’ motion for summary judgment and (2) denying Focus’ motions to disqualify the bankruptcy judge. Appellees contend that this appeal is moot and that, in any event, the bankruptcy and district courts correctly decided the merits.
 

 We do not dismiss Focus’ appeal as moot. However, because Focus did not present evidence that creates a triable issue of fact regarding the involuntary petition requirements of 11 U.S.C. § 303, and the bankruptcy judge did not abuse her discretion in deciding not to recuse herself, we affirm.
 

 BACKGROUND
 

 Focus was a media-buying company that placed commercial spots for its clients on television and radio stations. Its two major clients were Sears, Roebuck & Co. (“Sears”) and Universal City Studios, Inc. (“Universal”), each of which paid Focus in advance for booking commercial time on various media outlets, such as the petitioning creditors. Focus, in turn, would pay the media outlets for the booked commercial spots.
 

 Universal and Sears fired Focus in 1999 and 2000, respectively. Sears subsequently filed a civil suit against Focus in California superior court, alleging that funds it had paid Focus “were transferred for the specific purpose of Focus paying the Media Outlets on Sears’ behalf.” According to Sears, the funds had not in fact been used to pay the media. Thus, Sears sought a preliminary injunction against Focus, alleging that the money paid to
 
 *921
 
 Focus belonged to Sears and not Focus.
 
 [1]
 
 Focus, however, argued that it owed millions of dollars to the media for spots it had booked for Sears and others and thus should be permitted to keep the payments Sears had advanced to Focus. The superi- or court granted Sears a preliminary injunction on May 9, 2000, prohibiting Focus from distributing or transferring any of Sears’ funds.
 

 On October 6, 2000, NBC, ABC and Paxson filed an involuntary petition for Chapter 7 bankruptcy against Focus, pursuant to 11 U.S.C. § 303. Five ABC affiliates joined the petition in January 2001. The involuntary petition triggered an automatic stay of the state court proceedings under 11 U.S.C. § 362.
 

 On October 24, 2000, Sears moved in the bankruptcy court for relief from the automatic stay, so that it could pursue its state court action. The next day, Sears filed an alternative motion for the appointment of an interim trustee. On October 27, the bankruptcy court granted the motion for an interim trustee.
 

 The bankruptcy court proceedings were tense and hard-fought. On November 13, 2000, Focus moved to disqualify the bankruptcy judge, who heard the motion on December 27 and denied it on January 11, 2001. On July 18, 2001, Focus moved again to disqualify the bankruptcy judge, who, after a hearing, also denied this second motion on September 25. In addition to these two disqualification motions, Focus’ chief financial officer also filed a judicial misconduct complaint against the bankruptcy judge with the Judicial Council of the Ninth Circuit.
 
 [2]
 

 Meanwhile, on December 8, 2000, Focus filed a motion for summary judgment of the involuntary petition. The bankruptcy judge heard the motion on January 24, 2001, denying it on February 2.
 

 On August 1, 2001, the petitioning creditors filed their own motion for summary judgment. Under 11 U.S.C. § 303, petitioners may impose involuntary bankruptcy on an alleged debtor only if certain conditions are met. If the debtor has more than 12 total creditors, which Focus did at the time of the petition, the petitioners must show that (1) there are at least three qualified petitioning creditors; (2) they each hold claims against the debtor not subject to bona fide dispute and totaling at least $10,775; and (3) the debtor is not generally paying debts as they become due. 11 U.S.C. § 303(b)(1), (h)(1).
 
 [3]
 

 On September 25, the bankruptcy court granted the petitioning creditors’ motion as to these three issues. Specifically, the bankruptcy court found that there was not a genuine issue for trial as to the petitioning creditors’ showing that (1) seven of the
 
 *922
 
 eight petitioning creditors — ABC being the exception — had claims against Focus; (2) the claims of these seven petitioning creditors were not in bona fide dispute and totaled over $3 million; and (3) Focus’s debt structure revealed that it was not generally paying its debts as they became due.
 
 [4]
 

 The bankruptcy court, however, denied the petitioning creditors summary judgment on Focus’ affirmative defense of bad faith as to ABC. Expressing concern that a reviewing court might conclude that bad faith by ABC could defeat the petition entirely, the bankruptcy judge therefore declined to issue an order for relief in favor of the petitioning creditors. Instead, she held over for trial the issues of whether ABC had a claim against Focus and whether ABC had filed against Focus in bad faith. After a trial, the bankruptcy court ruled in favor of ABC on these issues and entered an order for relief on October 22, 2001. Focus promptly filed a notice of appeal to the district court from the order for relief and, after the district court affirmed the bankruptcy court, filed a combined notice of appeal with this court on May 12, 2003. Although Focus has appealed the bankruptcy court’s grant of summary judgment and denials of its disqualification motions, it has not appealed its claim of bad faith by ABC.
 

 DISCUSSION
 

 “We independently review the bankruptcy court’s ruling without deference to the district court’s decision.”
 
 Virtual Vision, Inc. v. Praegitzer Indus., Inc. (In re Virtual Vision, Inc.),
 
 124 F.3d 1140, 1143 (9th Cir.1997). Whereas the bankruptcy court’s decision to grant summary judgment is reviewed de novo, its factual findings are reviewed for clear error.
 
 See Am. Broad. Sys., Inc. v. Beta Communications, Inc. (In re Betacom of Phoenix, Inc.),
 
 240 F.3d 823, 828(9th Cir.2001). Summary judgment is appropriate “if the record shows that ‘there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.’ ”
 
 Arrow Elecs., Inc. v. Justus (In re Kaypro),
 
 218 F.3d 1070, 1073 (9th Cir.2000) (quoting Fed.R.Civ.P. 56(c)). Further, we review for abuse of discretion the bankruptcy court’s denial of Focus’ motions for disqualification.
 
 United States v. Wilkerson,
 
 208 F.3d 794, 797 (9th Cir.2000). Because Focus’ prior claim of bad faith by ABC is not before us, the order of relief can be sustained if we uphold the district court’s affirmation of the bankruptcy court’s summary judgment order and denial of Focus’ motions for disqualification.
 

 I. Mootness
 

 Appellees contend that Focus’ appeal is moot because Focus failed to obtain a stay in either the bankruptcy court or the district court and failed to seek one in this court. According to appellees, the trustee has filed and abandoned various claims in the bankruptcy proceeding and granting relief to Focus would create an unmanageable situation in the bankruptcy court.
 

 Bankruptcy appeals may become moot in one of two (somewhat overlapping) ways. First, events may occur that make it impossible for the appellate court to fashion effective relief.
 
 Bennett v. Gemmill (In re Combined Metals Reduction Co.),
 
 557 F.2d 179, 187 (9th Cir.1977). For example, when a trustee has already sold assets to third parties, a court may be
 
 *923
 
 powerless “to undo what has already been done.”
 
 Id.
 
 However, “[t]he party asserting mootness has a heavy burden to establish that there is no effective relief remaining for a court to provide.”
 
 Pintlar Corp. v. Fid. & Cas. Co. (In re Pintlar Corp.),
 
 124 F.3d 1310, 1312 (9th Cir.1997). Second, an appeal may become equitably moot when “[a]ppellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court,” thus “permitt[ing] such a comprehensive change of circumstances to occur as to render it inequitable ... to consider the merits of the appeal.”
 
 Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.),
 
 652 F.2d 793, 798 (9th Cir.1981). In
 
 Roberts Farms,
 
 “[a]ppellants did not at any time apply to the bankruptcy judge for a stay,”
 
 id.
 
 at 795, and we concluded that dismissal for mootness was appropriate,
 
 id.
 
 at 798.
 

 Fashioning relief in this case would not be impossible. Focus seeks relief primarily under 11 U.S.C. § 303(i). When a court dismisses an involuntary petition, § 303(i)(l) allows an award of costs and attorney’s fees from the petitioners to the debtor. Here, Focus also asks us to order the disgorgement of attorney’s fees previously paid out of Focus’ estate to the petitioning creditors’ attorneys. To clear the way for the relief Focus seeks, we would have to return control of the business to Focus, discharge the trustee and dismiss the involuntary petition.
 
 See Semel v. Dill (In re Dill),
 
 731 F.2d 629, 632 (9th Cir.1984) (“An award of attorney’s fees under 11 U.S.C. § 303(i) depends upon dismissal of the petition.”). Because we could fashion these equitable remedies, effective relief is available to Focus, and this case is therefore not moot under the first type of mootness.
 
 See Spirtos v. Moreno (In re Spirtos),
 
 992 F.2d 1004, 1007 (9th Cir.1993) (holding appeal not moot when court could order debtor to return to the estate post-confirmation distributions of pension plan assets).
 

 Neither are we persuaded that we should dismiss Focus’ appeal as equitably moot. Appellees have not demonstrated that this case “present[s] transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply.”
 
 Lowenschuss v. Selnick (In re Lowenschuss),
 
 170 F.3d 923, 933 (9th Cir.1999). Because Focus seeks an exit instead of a
 
 do-over
 
 — i.e., the termination of bankruptcy proceedings and the dismissal of the trustee, rather than a complex corporate restructuring — -the requested relief is not only possible but decidedly more practicable than the relief sought in other bankruptcy appeals we have dismissed as moot.
 
 See Baker & Drake, Inc. v. Pub. Serv. Comm’n (In re Baker & Drake, Inc.),
 
 35 F.3d 1348, 1351-52 (9th Cir.1994) (holding appeal not moot where bankruptcy proceedings involved third parties but “unlike
 
 Roberts Farms
 
 and
 
 [Rochman v. Northeast Utils. Serv. Group (In re Pub. Serv. Co.),
 
 963 F.2d 469 (1st Cir.1992) ], [the] reorganization plan is not a complex, billion-dollar affair that has affected ‘innumerable’ third parties”);
 
 cf. Mann v. Alexander Dawson Inc. (In re Mann),
 
 907 F.2d 923, 926 (9th Cir.1990) (explaining debtor’s failure to obtain stay of foreclosure sale pending appeal rendered moot his appeal of bankruptcy court’s ruling on foreclosure action, where debtor under California law no longer had right of redemption in the property and the sale would not be set aside).
 
 [5]
 
 Moreover, “an
 
 *924
 
 order compelling disgorgement of [attorney’s] fees and expenses would not require the bankruptcy court to unravel a complicated bankruptcy plan. Rather, it would require only that one party disgorge money it has received, money that would then be distributed pursuant to the bankruptcy court’s final decree.”
 
 S.S. Retail Stores Corp. v. Ekstrom (In re S.S. Retail Stores Corp.),
 
 216 F.3d 882, 884 (9th Cir.2000).
 

 Finally, unlike the appellants in
 
 Roberts Farms,
 
 Focus did seek stays of the order for relief in the bankruptcy court and before the district court. These requests were denied. Moreover, Focus did not invite these bankruptcy proceedings; rather, the petitioning creditors forced Focus into bankruptcy. We therefore decline to dismiss this appeal based on equitable mootness.
 

 II. Summary Judgment
 

 A. Bona Fide Dispute
 

 Petitioners in an involuntary Chapter 7 proceeding must establish that they have claims totaling at least $10,775 that are not subject to bona fide dispute. 11 U.S.C. § 303(b)(1). Here, Focus contends that the petitioning creditors’ claims are subject to bona fide dispute, notwithstanding the bankruptcy court’s finding that Focus owed the petitioning creditors millions of dollars. Focus contends that its obligations to these creditors is in dispute because of potential adjustments Focus’ clients may be entitled to from the petitioning creditors.
 

 In declarations filed in Focus’ state court litigation with Sears, Focus’ chairman and chief executive officer, Tom Rubin, explained that Focus “routinely [paid] the media 90 days after [receiving] their bills.” Rubin also admitted that Focus was “liable to the media for many millions of dollars.” A document that surfaced in the bankruptcy proceedings, Focus’ aged payables report, confirmed Rubin’s admission, listing $3 million in debts older than 90 days that Focus owed to the petitioning creditors as of March 31, 2000.
 
 [6]
 
 This amount far exceeds the $10,775 required by § 303(b)(1).
 
 [7]
 

 1.
 

 Focus contends that the amounts listed in its aged payables report overstate its actual debts because of an adjustment process called “post-analysis,” whereby Focus would reconcile advertising charges with the media for commercial spots that failed to run at the promised time or to achieve the promised audience. According to Focus, post-analysis “is completed 90 to 180 days after the end of the quarter,” after which Focus would contact the media stations to negotiate compensation for nonconforming commercials. Thus, for example, “[t]he parties ... agreed that Focus
 
 *925
 
 Media would pay invoices from NBC’s stations within 90 days after receipt of the station invoice, and that [post-analysis] would be resolved by negotiation and compromise, before any litigation was filed.”
 

 It is undisputed that the commercial spots giving rise to the debts listed in Focus’ aged payables report were never subjected to post-analysis. Focus contends, however, that it was unable to conduct a post-analysis because its employees quit during the bankruptcy proceeding and because the trustee took custody of the relevant files. In lieu of a post-analysis, Focus submitted to the bankruptcy court declarations from analysts who alleged that the petitioning creditors had overcharged Focus and, more generally, that a full post-analysis would reduce the amounts Focus owed to the petitioning creditors. Focus contends that because there has not been a full reconciliation of its debts to the petitioning creditors, those debts cannot be ascertained with certitude and are thus in dispute.
 

 Moreover, relying on our decision in
 
 Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems),
 
 277 F.3d 1057 (9th Cir.2002), Focus further contends that
 
 any
 
 uncertainty or dispute as to the amount of a debt is a bona fide dispute unless the dispute arises from a transaction that is wholly separate from the debt itself.
 
 Vortex
 
 held that a bona fide dispute exists when there is “a legitimate disagreement over whether money is owed, or,
 
 in certain cases,
 
 how much.”
 
 Id.
 
 at 1064 (emphasis added).
 
 Vortex
 
 also discussed
 
 Chicago Title Insurance Co. v. Seko Investment, Inc. (In re Seko Investment, Inc.),
 
 156 F.3d 1005(9th Cir.1998), noting that
 
 Seko
 
 had held that “a dispute as to the amount of a claim is not a bona fide dispute if it is based on a counterclaim arising from a wholly separate transaction.”
 
 Vortex,
 
 277 F.3d at 1065 n. 2. Focus argues that the uncertainty of the amounts owed to the petitioning creditors does not arise from a wholly separate transaction within the meaning of
 
 Vortex
 
 and
 
 Seko,
 
 and is therefore a bona fide dispute that defeats the petition under 11 U.S.C. § 303(b)(1). We conclude that the bankruptcy court properly found against Focus both on the facts and as a matter of law.
 

 2.
 

 Regarding the facts, the bankruptcy court found that even if post-analysis would have discovered nonconforming commercials that would have entitled Focus (or its clients) to an adjustment, the amounts shown as currently due in Focus’ aged payables report remained valid. Rubin’s explanation of post-analysis and his acknowledgment that Focus owed mib lions of dollars to the media companies establish that Focus was obligated to pay the amounts billed by the media as they came due, with any adjustments coming from a later and separate post-analysis. Further, as the district court explained:
 

 Focus makes only an argument for the
 
 potential
 
 that the amounts would be in dispute. At the stage of summary adjudication, it was incumbent upon Focus Media to present evidence to support its contention of disputes as to the actual amounts, listed in the reports or otherwise at issue, not merely to speculate how such claim could, potentially, be disputed.... [The declaration it submitted] amounted to argument, not a demonstration of a
 
 bona fide
 
 dispute.
 

 Thus, the bankruptcy court properly concluded that Focus had not established any actual dispute as to the amounts owed the petitioning creditors.
 

 Regarding our case law, even assuming there was an actual, non-theoretical dispute as to the precise amounts Fo
 
 *926
 
 cus owed the petitioning creditors, under
 
 Seko
 
 such a dispute is relevant only if it takes the total debt below $10,775. We disagree with Focus’ contention that an uncertainty or dispute as to amounts owed above $10,775 can create a bona fide dispute as to the entire debt. When a counterclaim arises from the
 
 same
 
 transaction as the debtor’s claim, it:
 

 may serve to work a diminution or setoff of the claim of the petitioning creditors. Because the Bankruptcy Code requires that the claims of petitioning creditors against a debtor aggregate [a certain amount], this diminution can reduce a petitioning creditor’s claim so that the creditor is no longer eligible to file an involuntary petition.
 

 Seko,
 
 156 F.3d at 1008(citations and internal quotation marks omitted).
 
 [8]
 
 Under
 
 Seko,
 
 a dispute as to the amount of a claim gives rise to a bona fide dispute only when (1) it does not arise from a wholly separate transaction
 
 and
 
 (2) “netting out the claims of debtors” could take the petitioning creditors below the amount threshold of § 303.
 
 Id.
 

 That
 
 Vortex
 
 referred only to the first of
 
 Seko’s
 
 premises does not undermine the second.
 
 Seko’s
 
 discussion of netting out the claims of debtors merely stated a widely accepted proposition regarding involuntary bankruptcy petitions: “[I]f at least a portion of the debt that is the subject of the petition is undisputed, the undisputed portion is sufficient to create a debt under Section 303(b)(1) not subject to a bona fide dispute.”
 
 IBM Credit Corp. v. Compuhouse Sys., Inc.,
 
 179 B.R. 474, 479 (W.D.Pa.1995);
 
 see Subway Equip. Leasing Corp. v. Sims (In re Sims),
 
 994 F.2d 210, 221 (5th Cir.1993) (explaining that even if creditors had failed to make reasonable efforts to mitigate their damages, “any such failure would serve only to reduce the amount of [their] claims ... [;] it would not constitute a substantial factual or legal question bearing on the debtors’ liability”);
 
 see also In re Willow Lake Partners II, L.P.,
 
 156 B.R. 638, 642-43 (Bankr.W.D.Mo.1993);
 
 In re F.R.P. Indus., Inc.,
 
 73 B.R. 309, 312 (Bankr.N.D.Fla.1987);
 
 In re Onyx Telecomm., Ltd.,
 
 60 B.R. 492, 497 (Bankr.S.D.N.Y. 1985); 2 Collier on Bankruptcy § 303.03[2][b][i] (15th Ed. revised 2000) [hereinafter “Collier”] (citing
 
 Seko
 
 for the proposition that “a counterclaim arising out of a different transaction (and hence not creating a right of recoupment) does not evidence the existence of a bona fide dispute. Counterclaims, however, may be relevant in determining whether the requisite dollar amount is met under section 303(b)(1) or whether the debtor is generally not paying its debts as they become due under section 303(h)(1).”).
 

 Applying this proposition here, we conclude that Focus did not raise a triable issue of fact as to whether the petitioning creditors have claims totaling at least $10,775 that are not subject to a bona fide dispute. Plainly, Focus did not present evidence to show that its debts to the petitioning creditors fell below this threshold. Nothing in the record rebuts the petitioning creditors’ documented assertions that their claims totaled millions of dollars, well over $10,775. Nor is there
 
 *927
 
 evidence suggesting that any post-analysis would have generated adjustments of the magnitude necessary to shrink the millions of dollars of debt anywhere near $10,775, much less below that amount. Moreover, Focus has not pointed to evidence that the interim trustee prevented it from conducting post-analysis, or any authority supporting its view that the departure of Focus’ employees excused it from having to conduct post-analysis. We therefore hold that the bankruptcy court appropriately granted summary judgment to the petitioning creditors, finding that they collectively held claims totaling at least $10,775 that were not subject to a bona fide dispute.
 

 B. Three-Entity Requirement
 

 The eight petitioning creditors include ABC and five of its affiliates. The affiliates’ qualifications as petitioning creditors were determined at summary judgment, whereas ABC’s qualifications were determined after' trial. Focus now contends that ABC and its affiliates are disqualified as petitioning creditors because they illicitly transferred or acquired claims for the purpose of initiating the involuntary bankruptcy in violation of Bankruptcy Rule 1003(a), which provides:
 

 A transferor or transferee of a claim shall annex to the original and each copy of the petition a copy of all documents evidencing the transfer, whether transferred unconditionally, for security, or otherwise, and a signed statement that the claim was not transferred for the purpose of commencing the case and setting forth the consideration for and terms of the transfer. An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner.
 

 Here, the petition would not satisfy the three-entity requirement of § 303(b)(1) only if Focus is correct that ABC
 
 and
 
 its five affiliates are disqualified as petitioning creditors under Rule 1003, in which case only NBC and Paxson would remain.
 

 During the trial concerning ABC’s petition, ABC offered testimony that its affiliates had turned to ABC to facilitate the collection of debts owed them by Focus. Tanya Menton, an attorney for ABC, testified in reference to these debt collection efforts that, “in my humble opinion ... there was a transfer of all of the claims [from the ABC affiliates] to ABC, Inc.” She explained, however, that the affiliates “did not come to [her] and ask that [she] file a petition for involuntary bankruptcy,” but instead sought her help in collecting
 
 their
 
 claims against Focus. Relying on Menton’s testimony, Focus argues that ABC and its five affiliates cannot be qualified petitioning creditors because they “transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7” in violation of Rule 1003(a).
 
 [9]
 

 Rule 1003 endeavors to curtail “trafficking” in claims.
 
 Sims,
 
 994 F.2d at 216 n. 6;
 
 In re Butcher,
 
 32 B.R. 572, 575 n.
 
 *928
 
 9 (Bankr.E.D.Tenn.1983). Without Rule 1003, such trafficking could enable entities without proper claims to acquire them and thus become petitioning creditors, or facilitate claim-splitting by companies seeking to satisfy the three-entity requirement.
 
 See In re Averil, Inc.,
 
 33 B.R. 562, 563 (Bankr.S.D.Fla.1983) (expressing concern that”[i]f the co-owners of a single obligation qualify as separate claimants ... [the] legislative purpose [of requiring a joint effort to launch an involuntary proceeding] would be frustrated”).
 

 Here, the bankruptcy court did not err in finding that there 'were no illicit transfers. Notwithstanding Menton’s testimony, the bankruptcy court observed:
 

 Nobody testified to there being an oral or written request for transfer. Ms. Menton’s feeling that those entities wanted ABC, Inc. to collect the debt from Focus falls far short of there being a legally valid transfer or an assignment from the subsidiaries to ABC, Inc. Moreover there was no testimony about any particular subsidiary.
 

 In addition, Focus’ contention that the ABC affiliates transferred their claims to ABC is contradicted by a prior agreement between ABC and Focus. According to that agreement, ABC could not claim for itself debts owed to separately incorporated media stations, even if those stations were affiliates of ABC. Consistent with the agreement, ABC never did contend that it qualified as a petitioning creditor based on the debts owed to the five ABC affiliates that separately filed their own petitions.
 
 [10]
 
 Thus, the bankruptcy court did not err in rejecting Menton’s characterization of the facts and finding instead that ABC’s affiliates had not transferred their claims to ABC.
 

 We therefore conclude that ABC and its five affiliates were not subject to disqualification as petitioning creditors under Rule 1003. Given that NBC, Paxson and the five ABC affiliates each holds claims against Focus that are not subject to a bona fide dispute, the bankruptcy court correctly concluded that there was no triable issue of fact regarding § 303(b)(l)’s three-entity requirement.
 

 C. Paying Debts as they Become Due
 

 Because we agree with the bankruptcy court that there were no triable issues of fact regarding the bona fide dispute and three-entity issues, we turn to the issue of whether Focus was not generally paying its debts as they became due.
 
 See
 
 11 U.S.C. § 303(h)(1). Before summary judgment, the bankruptcy court imposed a discovery sanction on Focus, establishing as fact that Focus was not generally paying its debts as they became due. Nonetheless, in granting summary judgment, the bankruptcy court made an “independent and separate” finding to this effect based on the record before it.
 

 We agree with the bankruptcy court’s grant of summary judgment on this issue. This circuit has adopted a “totality of the circumstances” test for determining whether an alleged debtor is generally
 
 *929
 
 paying its debts as they become due.
 
 Hayes v. Rewald (In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.),
 
 779 F.2d 471, 475 (9th Cir.1985). Thus, “[a] finding that a debtor is generally not paying its debts ‘requires a more general showing of the debtor’s financial condition and debt structure than merely establishing the existence of a few unpaid debts.’ ”
 
 Vortex,
 
 277 F.3d at 1072 (quoting
 
 Dill,
 
 731 F.2d at 632). In
 
 Vortex,
 
 for example, we held that the bankruptcy court did not clearly err in finding that Vortex was generally paying its debts as they became due, where “Vortex ha[d] been paying off the debts it ha[d] incurred, including a full settlement of the IRS deficiency that was assessed.” 277 F.3d at 1072.
 

 The circumstances of
 
 Vortex
 
 are not replicated here. As we have explained, Rubin admitted in his state court declarations that Focus’ debts to media companies became due within 90 days of receiving their invoices and that Focus owed media companies millions of dollars for such debts. There is no evidence that Focus was paying off its debts owed to the media companies at all, let alone within 90 days. Further, the bankruptcy court explained:
 

 Th[e] aged payables report (as of 3/31/00) shows $63,884,983 total owed to creditors listed in the report, of which $49,482,956 is OVER 90 days old. No evidence has been presented on this motion by Focus that any of this was paid between 3/31/00 and the date the petition was filed (10/06/00). Having 80% of your debts over 90 days old is not paying debts as they come due.
 

 We agree. The record does not depict a company with a few unpaid bills. Instead, it depicts a company that had substantial amounts of unpaid bills and no plans or ability to pay them. Finally, Focus does not contend that the bankruptcy court’s discovery sanction ruling prevented it from demonstrating that it was paying off its debts.
 
 [11]
 
 We therefore conclude that Focus failed to create a triable issue of fact regarding whether it was generally paying its debts as they became due.
 

 III. Recusal
 

 “Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned.” 28 U.S.C. § 455(a). In reviewing the bankruptcy judge’s denials of Focus’ disqualification motions for abuse of discretion, “[t]he test is whether a reasonable person with knowledge of all the facts would conclude that [her] impartiality might reasonably be questioned.”
 
 Wilkerson,
 
 208 F.3d at 797 (internal quotation marks omitted). Here, Focus contends that the bankruptcy judge orchestrated the bankruptcy proceedings to ensure that the petitioning creditors would prevail. Focus infers this bias from the bankruptcy judge’s (1) substantive rulings, (2) references to the judicial misconduct complaint filed against her and to possible misconduct by Focus’ principals and (3) conduct of the proceedings in general. Based on our review of the record, we conclude that a reasonable person with knowledge of all the facts would neither infer such bias nor otherwise question the bankruptcy judge’s impartiality.
 

 A. Substantive Rulings
 

 The rulings about which Focus complains include: the bankruptcy judge’s appointment of an interim trustee; her refusal to order the trustee to pay Focus’ attorney’s fees and costs out of the estate;
 
 *930
 
 discovery sanctions she imposed on Focus; and her failure to sanction the petitioning creditors. Notwithstanding Focus’ complaints,
 

 judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves
 
 (ie.,
 
 apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required ... when no extrajudicial source is involved.
 

 Liteky v. United States,
 
 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (internal citation omitted).
 

 Here, Focus has not shown that the bankruptcy court’s substantive rulings were products of “deep-seated favoritism or antagonism that [made] fair judgment impossible.”
 
 Id.
 
 Rather, Focus argues that these rulings were erroneous and that such error is itself evidence of bias. This argument does not support a recusal motion. “Judges are known to make procedural and even substantive errors on occasion. The errors alleged here would be the basis for appeal, not recusal.”
 
 F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,
 
 244 F.3d 1128, 1145 (9th Cir.2001).
 

 B. References
 

 Focus also alleges that the bankruptcy judge improperly referred to the judicial misconduct complaint filed against her by Focus’ chief financial officer, Thomas Sullivan, and to possible misconduct by Focus’ principals. But these references, like the bankruptcy court’s substantive rulings, related to the merits of the bankruptcy proceedings.
 

 Sullivan filed the judicial misconduct complaint with the Judicial Council of this circuit. The relevant statute provides that a copy of any such complaint shall be provided to the judge whose conduct is the subject of the complaint.
 
 See
 
 28 U.S.C. § 351(c). The bankruptcy judge explained that because the complaint contained information and allegations relevant to the bankruptcy proceedings — specifically, Sullivan’s characterization of the bankruptcy proceedings up to the filing of the complaint — she provided a copy of it to the petitioning creditors. She also permitted the petitioning creditors to question Sullivan about his assertions in the complaint, in particular his contention that the bankruptcy judge had “repeatedly relinquished control over the defense of this contested case to [the] interim trustee.” When asked to support this contention, Sullivan invoked his Fifth Amendment rights against self-incrimination. Subsequently, in assessing Sullivan’s credibility, the bankruptcy judge cited the complaint (but not Sullivan’s invocation of the Fifth Amendment) — among other, damaging statements by
 
 Sullivan
 
 — in concluding that he could not be believed. Although the situation was perhaps unusual, a reasonable person with knowledge of all the facts would conclude that the bankruptcy judge referred to the judicial misconduct complaint because she had concluded that Sullivan’s factual allegations in the complaint undermined his credibility, not because the complaint itself biased the bankruptcy judge against Focus. Absent some evidence of real bias, we are not prepared to infer bias lest we open the door to misuse of the judicial misconduct complaint process as a means of removing a disfavored judge from a case.
 

 The bankruptcy judge also alluded to the possibility that Focus’ principals might have impeded discovery and improperly disbursed Focus’ assets. Such potential malfeasance was relevant to the bankruptcy proceedings, however, because of the bankruptcy judge’s role in assess
 
 *931
 
 ing whether discovery sanctions were appropriate and whether Focus’ assets were being properly kept and accounted for. Although Focus contends that no malfeasance occurred, it cannot reasonably argue that the issue was irrelevant to a proceeding designed to ensure the proper disposition of Focus’ assets. The bankruptcy judge’s references to Focus’ potential malfeasance do not, therefore, provide a basis for questioning her impartiality.
 

 C. Administration of the Proceedings
 

 Finally, Focus points to the bankruptcy judge’s administration of the proceedings as potential evidence of partiality. Although the proceedings were lengthy and the bankruptcy judge may at times have been stern, Focus has cited nothing in the record to suggest that the bankruptcy judge was unwilling to hear and respond to Focus’ concerns and arguments. For example, although the bankruptcy judge expressed frustration with Focus’ discovery responses and ultimately imposed a discovery sanction, she routinely sought Focus’ version of the story and interrogated petitioning creditors’ counsel about that version. Similarly, although Focus complains about a hearing that ended at almost one o’clock in the morning, Focus does not explain how the hearing was intended to disadvantage Focus. On the contrary, the bankruptcy judge stated that she thought “it was in the interest of justice to get this completed.”
 

 “ ![J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.’ ”
 
 United States v. Martin,
 
 278 F.3d 988, 1005 (9th Cir.2002) (quoting
 
 Liteky,
 
 510 U.S. at 555, 114 S.Ct. 1147). Here, the bankruptcy judge’s comments “may have been testy, but they do not justify a recu-sal under
 
 Liteky.
 
 The comments were not based on any extrajudicial source. Rather, the judge’s ‘knowledge and the [disposition she] produced were properly and necessarily acquired in the course of the proceedings.’ ”
 
 Id.
 
 (quoting
 
 Liteky,
 
 510 U.S. at 551, 114 S.Ct. 1147). To the extent the bankruptcy judge treated Focus with disapproval, she did so by way of adverse rulings and — a reasonable observer would conclude — -because of her view that Focus’ claims tended to lack merit and that its cooperation (particularly during discovery) left much to be desired. These actions do not support Focus’ argument that the bankruptcy judge’s rulings evinced a broader, improper design to hurt Focus. We therefore hold that the bankruptcy judge did not abuse her discretion in denying Focus’ motions for disqualification.
 

 CONCLUSION
 

 We agree with the bankruptcy court that Focus did not create a triable issue of fact regarding whether the petitioning creditors’ claims were subject to a bona fide dispute, whether there were at least three qualified petitioning creditors or whether Focus was generally paying off its debts as they became due. We also hold that the bankruptcy judge did not abuse her discretion in denying Focus’ motions for disqualification.
 

 AFFIRMED.
 

 [1]
 

 . Focus filed a cross-complaint against Sears, including claims of fraud and breach of contract.
 

 [2]
 

 . Because the chief judge’s and Judicial Council's consideration of judicial complaints is confidential, we do not discuss here the disposition of the complaint filed against the bankruptcy judge.
 
 See
 
 28 U.S.C. § 360(a); Rule 16 of the Rules of the Judicial Council of the Ninth Circuit Governing Complaints of Judicial Misconduct or Disability.
 

 [3]
 

 . Although the threshold amount listed in 11 U.S.C. § 303(b)(1) is $10,000, this threshold is adjusted for inflation at three year intervals.
 
 See
 
 11 U.S.C. § 104. The requirement in effect when this proceeding commenced was $10,775.
 
 See
 
 Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(B) of The Code, 66 Fed. Reg. 10910 (Feb. 20, 2001) (raising amount from $10,775 to $11,625 for cases commenced on or after April 1, 2001); Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(B) of The Code, 63 Fed.Reg. 7179 (Feb. 12, 1998) (raising amount from $10,000 to $10,775 for cases commenced on or after April 1, 1998).
 

 [4]
 

 . The court explained that its finding that Focus was not paying its debts as they came due was "independent and separate” from a similar finding previously imposed as a discovery sanction on Focus after four hearings regarding Focus' discovery noncompliance.
 

 [5]
 

 . In
 
 Baker & Drake,
 
 Baker had supported its mootness argument by pointing to other claimants “who have expended time and money to resolve their claims through an arbitration procedure established under the plan.” 35 F.3d at 1352 n. 2. But Baker gave
 
 *924
 
 "no specifics with regard to their numbers, their claims, or how far along in the claims-resolution process they have come.”
 
 Id.
 
 We concluded that "[t]his information is therefore
 
 too vague
 
 to be given much weight in our mootness analysis.”
 
 Id.
 
 (emphasis added). Here, appellees' argument for mootness is similarly vague; they have not identified specific events or developments in the proceedings that preclude relief.
 

 [6]
 

 . This total refers only to the debts of seven of the eight petitioning creditors, excluding those claimed by ABC. Because we conclude that the petitions filed by the seven petitioning creditors other than ABC are sufficient to satisfy the requirements of § 303, we do not decide whether ABC had a qualifying claim against Focus.
 

 [7]
 

 . Focus argues that Rubin's declarations and the aged payables report were not properly authenticated in the bankruptcy court. Because Focus raises this issue for the first time on appeal, it is waived.
 
 See Ganis Credit Corp. v. Anderson (In re Ian Weilert RV, Inc.),
 
 315 F.3d 1192, 1199 (9th Cir.2003).
 

 [8]
 

 .
 
 Seko
 
 analogized its counterclaim analysis to recoupment, insofar as a counterclaim for recoupment must arise out of the same transaction that is the basis of the initial claim. "Although recoupment is usually asserted by a creditor against a debtor, there is no reason the principles should differ when the positions of the parties are reversed.” 156 F.3d at 1009. Thus, "[t]he practice of netting out the claims of debtors and their creditors only makes sense when a counterclaim for recoupment on a creditor’s claim is involved.”
 
 Id.
 
 at 1008.
 

 [9]
 

 . Appellees argue that Focus has waived its Rule 1003 argument by failing to raise it at the summary judgment stage before the bankruptcy court or at all before the district court. Even assuming a waiver occurred, the issue is one of law, and the record has been adequately developed because the bankruptcy court in fact considered (and rejected) Focus' argument that ABC's affiliates were disqualified as petitioners under Rule 1003. We therefore reach the merits of Focus’ claim.
 
 See Bolker v. Comm’r,
 
 760 F.2d 1039, 1042 (9th Cir.1985) (holding exception to the waiver rule exists “when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed”).
 

 [10]
 

 . Consistent with the parties’ agreement, ABC did assert at trial that it could claim debts owed to stations that it owned directly (as opposed to separately incorporated affiliates). Based on these debts, which did not include the debts Focus owed to the five affiliates that filed their own petitions, the bankruptcy court concluded after trial that ABC was a qualified petitioner. Because we con-elude that the five ABC affiliates that filed their own petitions did not violate Rule 1003 and are qualified petitioning creditors, ABC’s status is irrelevant to whether § 303(b)(l)’s three-entity requirement has been met. Thus, we do not decide whether ABC could assert the claims of its directly owned subsidiaries and, accordingly, whether ABC itself is a qualified petitioning creditor.
 

 [11]
 

 . Because we affirm on the merits, we do not decide whether the bankruptcy court abused its discretion in imposing the discovery sanction.